Tammy BAKER and Dina Baker, Minors, By and Through their Next Friend, Patsy BAKER, Appellants,

v.

INTERNATIONAL HARVESTER COMPANY, Respondent.

No. 44436.

Missouri Court of Appeals, Eastern District, Division Two.

Sept. 6, 1983.

Motion For Rehearing and/or Transfer to Supreme Court Denied Oct. 26, 1983.

Vincent M. Igoe, Sr., St. Louis, for appellants.

Joseph Kortenhof and Steve Hoyne, St. Louis, for respondent.

SIMON, Judge.

Products liability case.

Appeal by plaintiffs (widow and two children of deceased) from a directed verdict for defendant International Harvester Company (manufacturer) on the ground plaintiffs failed to present a submissible case of strict liability in tort. Plaintiffs alleged (a) defective design, and (b) inadequate warning of a danger alleged to exist in the use of an International Harvester Model 815 Combine. We affirm.

The evidence must be considered in a light most favorable to plaintiffs. *Braun v. General Motors Corp.,* 579 S.W.2d 766 (Mo. App.1979).

On the morning of November 6, 1976, decedent with his wife and two children left their home in St. Louis to visit decedent's father who lived in a rural, farming area in New Madrid County. While enroute, decedent expressed his intention to hunt from combines. They arrived about 10:30 a.m.

At approximately 9:45 a.m. on the same morning, Tony and Earl Dell, two brothers, set out to harvest a neighbor's bean field. Tony and Earl, working alone in the field, intended to harvest 30–35 acres that day. They were using a Model 815 International Harvester Combine, purchased by them earlier that year.

In the meantime, decedent met Junior Deprow, and together they set out to go hunting. Decedent and Deprow went to the field the Dells were harvesting at about noon. Tony Dell was operating the combine. Tony operated the combine from about that time until 2 o'clock in the afternoon, when Earl Dell took over the operation.

Tony had seen people hunting from other combines on prior occasions, including actually shooting from a combine. A product safety engineer employed by manufacturer admitted from his experience as a hunter, people illegally hunted from combines. Earlier in the day, Tony saw Deprow riding on the combine. He said nothing to him. It was not unusual for Deprow to be riding on the combine. The only risk Tony sensed was the risk to himself from the gun. Before Earl took over the operation of the combine, decedent and Deprow had earlier boarded the combine and had ridden back to the vehicles with Tony. Tony had not told decedent or Deprow not to ride the combine. The Dells elected to harvest the beans with combine ladder in the down position. The ladder was designed so it could be pulled up by the combine operator to an unboardable position so as to prevent anyone using the ladder to board the combine.

Earl Dell took over the operation of the combine at about 2 o'clock in the afternoon. He had on previous occasions seen people hunting from a combine. Although Earl had seen decedent and Deprow hunting in the field, he was not aware that they had ridden the combine earlier that day while Tony was operating it.

Earl started his run through the bean field. The combine was operating through the beans at about 3 to 4 miles per hour. After the combine had traveled about 100 feet to 150 feet from the place where Earl had taken over the controls, Earl was setting the header while looking out the right side of the machine to see the height at which the beans were being cut when he

saw a movement out of the corner of his left eye. Turning, he saw the decedent who appeared to be standing on the combine ladder. Decedent's gun was pointed at the cab. Earl was afraid the gun would go off and "blow" him out of the combine, so he prepared to stop the machine by letting up on the throttle. He intended to ask decedent to please get off. When Earl turned back to his instruments to prepare to stop, he felt a bump. Decedent had fallen from the combine and was killed by the combine wheel which ran over him. A settlement was effected between plaintiffs and Earl Dell.

In *Keener v. Dayton Electric Mfg. Co.,* 445 S.W.2d 362 (Mo.1969) our Supreme Court adopted the rule of strict liability in tort as stated in Restatement of Torts (Second) § 402A.

The issue to be resolved is whether plaintiffs' evidence showed the combine contained a design defect which made the combine unreasonably dangerous when put to a use reasonably anticipated, and proximately caused decedent's death. The primary use to which a combine is put is harvesting grain or beans in a field in a rural area. Combines are infrequently operated on public roadways or in populated areas. It has a complicated control panel. The combine ladder must at all times be kept a certain, good harvesting distance above the ground.

Plaintiffs claim the omission of four safety items constituted a design defect in the combine. The absence of a safety factor may constitute a dangerous condition and therefore be defective. Strict liability in tort applies to defective design cases. *Blevins v. Cushman Motors,* 551 S.W.2d 602, 606–607 (Mo. banc 1977); *Higgins v. Paul Hardeman, Inc.,* 457 S.W.2d 943, 947 (Mo.App.1970). But the manufacturer does not have a duty to design an accident proof product. *Brawner v. Liberty Industries, Inc.,* 573 S.W.2d 376, 377 (Mo. App.1978).

Plaintiffs presented evidence by expert opinion that International Harvester should have:

(1) Installed a guard to protect the decedent from falling under the combine; and

(2) Installed adequate right-hand and bubble mirrors to give the combine operator complete awareness of the activity of decedent in the vicinity of the combine; and

(3) Placed a more adequate warning of the danger to decedent about riding on the combine; and

(4) Provided an interlock to prevent the operation of the combine while the ladder was in a down position, or otherwise design the ladder so as to prevent decedent from riding on the combine while it was moving.

Without finding there was substantial evidence of a design defect in the combine, we do find any such design defect did not make the combine unreasonably dangerous when put to its anticipated use of harvesting grain or beans. Strict liability focuses on foreseeable or reasonably anticipated use of the combine, rather than on the reasonably anticipated harm the combine may cause. *Blevins v. Cushman Motors,* 551 S.W.2d 602, 607–608 (Mo. banc 1977).

The use of the ladder by decedent while holding onto a gun, without knowledge of such use by the combine operator, and at a time when the combine was being used to harvest beans in a rural area, was a use by decedent not intended nor anticipated by the manufacturer. Decedent was a user, and not a bystander, of the combine. *Mead v. Corbin Equipment, Inc.,* 586 S.W.2d 388, 392 (Mo.App.1979). The unannounced and unexpected boarding of the combine ladder by decedent while holding a gun was a species of abnormal use which bars recovery under the doctrine of strict liability. *Coulter v. Michelin Tire Corp.,* 622 S.W.2d 421, 430–431 (Mo.App.1981). And, the manufacturer has no duty to warn of an unintended use.

Judgment affirmed.

GEORGE F. GUNN, Special Judge and CRIST, P.J., concur.