Joseph A. LANEY, a minor, Christopher J. Laney, a minor by and through their next friend, Sondra Greenwood; Sondra Greenwood, Appellees,

v.

The COLEMAN COMPANY, INC., Appellant.

No. 83–2600.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1984.

Decided April 9, 1985.

Thomas C. Walsh, St. Louis, Mo., for appellant.

David G. Owen, for amicus curiae.

Elwood L. Thomas, Kansas City, Mo., for appellees.

Before ROSS, Circuit Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Plaintiffs in this diversity action, Christopher and Joseph Laney, sued defendant The Coleman Company, Inc. (Coleman) on a theory of strict liability in tort, alleging that they were burned when a defectively designed Coleman fuel can exploded. Following a jury trial, judgment was entered in favor of plaintiffs for $1 million actual damages and $3 million punitive damages. Coleman appealed. We affirm the award of actual damages and reverse the award of punitive damages.

On November 5, 1973, Joseph Laney discovered his brother Christopher Laney, along with a playmate, Scott McCarter, in the McCarters' garage. Christopher and Scott were trying to ignite a small pile of leaves with stick matches. A fire soon was started. While Joseph and Christopher were squatting near the fire, Scott poured some gasoline from a one-gallon can onto the fire. Joseph and Christopher were seriously burned. At the time of this accident, Joseph and Scott were six years old. Christopher was five years old.

The can from which Scott poured gasoline onto the fire was not introduced into evidence. The record, however, contains evidence from which the jury could conclude that the can was one in which the McCarters originally had purchased Coleman fuel and that gasoline was stored in the can after the Coleman fuel had been used.

Christopher testified that when Scott poured gasoline onto the fire, "the flame went up the travel of the gas that was coming out, and went up in the can...." Trial Transcript (Tr.) IV:57. This description is consistent with an occurrence known as "flashback." Additionally, both plaintiffs testified that there was a bright light and a bang and Christopher plainly stated that the can blew up. Scott's parents described the can's appearance after the accident as charred and partially exploded. This evidence supports plaintiffs' claims that they were burned by flames which shot out of the fuel can and by burning fuel which spilled from the ruptured fuel can when a flashback caused an explosion inside the fuel can.

Coleman offered a different version of the accident, arguing that plaintiffs were burned by flames which flared up either from gasoline that was poured onto the leaf fire or from gasoline that was spilled near the fire. Coleman presented evidence both to support its position and to discredit plaintiffs' claims of an explosion. The jury resolved these conflicting versions of the accident in favor of plaintiffs.

## I. The Award of Actual Damages

■ Plaintiffs tried their case on the theory that the can in which Coleman marketed its fuel was defective in design because it lacked a "flashback arrester," *i.e.*, "a piece of screen placed over the aperture of the can to prevent the flashback of the flame into the can." Brief of Appellant at 2. To hold Coleman strictly liable for marketing its fuel in a can not equipped with a flashback arrester, plaintiffs were required

to prove that: (1) the fuel can, when sold, was in a defective condition unreasonably dangerous for use; (2) the fuel can reached the user without substantial change from the condition in which it was sold; (3) the accident was proximately caused by the lack of a flashback arrester on the fuel can; and (4) the fuel can was being used at the time of the accident in a manner reasonably anticipated by Coleman. *See Vanskike v. ACF Industries*, 665 F.2d 188, 194–95 (8th Cir.1981) (applying Missouri law), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982); *Jarrell v. Fort Worth Steel & Manufacturing Co.*, 666 S.W.2d 828, 834 (Mo.Ct.App.1984). Coleman argues that plaintiffs failed to prove several essential elements of their strict products liability claims and, therefore, that it was entitled to judgment as a matter of law.

■ Coleman made every attempt to convince the jury that its product was safe and it now insists that plaintiffs have not proved that the can was defective and unreasonably dangerous. Plaintiffs' expert witness, however, testified that the can was "defective in design because it could be improved at low cost with a flame arrester," [1] and that "a flame arrester under the conditions that have been described [by plaintiffs] would have stopped that explosion, and therefore there would have been no damage." Tr. at III:97. The jury apparently accepted the testimony of plaintiffs' expert and other evidence favorable to plaintiffs on this point. We cannot say that the evidence is insufficient as a matter of law to support the jury's finding that the fuel can was defective and unreasonably dangerous.

■ Coleman's chief argument is that, when plaintiffs were injured, the fuel can was not being put to a use reasonably anticipated by Coleman. Specifically, Coleman contends that it did not reasonably anticipate that its fuel can would be used by children or that its fuel can would be used near a fire. To bolster this argument, Coleman cites warnings on its fuel cans that they are to be kept out of the reach of children and are not to be used or stored near heat, sparks, or open flame.[2]

The principle upon which Coleman's argument regarding anticipated use must rest is foreseeability. The issue is not what use Coleman intended for its product but what use of the product objectively was foreseeable. *See Rogers v. Toro Manufacturing Company*, 522 S.W.2d 632, 638–39 (Mo.Ct.App.1975). We do not question Coleman's intentions, as evidenced by the warnings, that its fuel cans be used only by adults away from sources of heat. Coleman's well-meaning intentions do not, however, foreclose an inquiry into the foreseeability of the use of a Coleman fuel can such as took place in this case. "Even misuse may be foreseeable." *Id.* at 638.

Evidence was presented on the issue of foreseeability and the issue was argued to the jury. The jury apparently concluded that it was reasonably foreseeable to Coleman that its fuel cans would fall into the hands of children and be used near sources of heat. Neither Coleman's arguments nor our review of the record convinces us that this conclusion by the jury should be reversed as a matter of law.[3]

■ Coleman further suggests that it should prevail under the authority of *Brawner v. Liberty Industries*, 573 S.W.2d 376 (Mo.App.1978). We agree with the court in *Brawner* that manufacturers are not insurers nor are they required to produce accident-proof products. *See id.* at

---

1. One Coleman design engineer estimated this cost to be between one and one-half cent and fifty cents per can, while another estimated the cost to be ten to twenty cents plus installation costs per can. *See* Tr. at IV:104, II:119.

2. Although the evidence does not conclusively establish the presence of such warnings on the fuel can in this case, it certainly permits an inference that the warnings were present.

3. Likewise, the jury could determine that it was reasonably foreseeable that a consumer who purchased Coleman fuel would store gasoline in the fuel can after the Coleman fuel had been used.

377. *Brawner,* however, is not dispositive of the issues in this case.

Bradley Brawner was burned when he and a playmate removed the cap of a gasoline container and the gasoline ignited. Brawner sued, alleging that the gasoline container was defective because it was not equipped with a device that would prevent a child from opening it. In affirming the trial court's dismissal of Brawner's lawsuit, the Missouri Court of Appeals concluded that a product made for adult use was not defective and unreasonably dangerous solely because it had not been made child-proof. *Id.* at 378. We acknowledge the similarities between *Brawner* and this case; both involve injuries to children and both involve cans containing gasoline. The critical legal issues presented by the two cases, however, are dissimilar. Plaintiffs in the instant case do not claim that the fuel can was defective solely because it was not child-proof. They claim that it was defective because it did not include a flash-back arrester, the lack of which presumably could result in injury to any user, adult or child.

Coleman also relies on *Baker v. International Harvester Company,* 660 S.W.2d 21 (Mo.Ct.App.1983), in which the widow and children of a man who was run over by a combine brought a strict liability suit against the combine manufacturer. A reading of *Baker* discloses that the combine had a ladder attached to its side to allow the driver to board. At the time of the accident the combine was being used to harvest beans. Unbeknownst to the combine operator, the decedent, with gun in hand, climbed onto the combine ladder to hunt from the moving combine. The operator noticed the decedent, but before he could stop the combine and ask the decedent to get off, the decedent fell from the ladder and was run over. *See id.* at 22–23.

The trial court in *Baker* directed a verdict for the combine manufacturer. The Missouri Court of Appeals agreed that the plaintiffs were barred from recovery under the doctrine of strict liability because the decedent's use of the ladder was a use that was neither intended nor anticipated by the manufacturer. *See id.* at 23. While we do not question the correctness of the court's holding in *Baker,* we view it as being highly fact-specific. *Baker* is not controlling here because the product use, or misuse, in *Baker* is not sufficiently analogous to that in the instant case.

■■■ We have considered every argument advanced by Coleman in its effort to secure judgment as a matter of law.[4] As we are required to do when asked to reverse a trial court's denial of a motion for directed verdict or for judgment notwithstanding the verdict, we have carefully reviewed the entire record in the light most favorable to the party opposing the motion —here, plaintiffs. *See Jackson v. Prudential Insurance Company of America,* 736 F.2d 450, 452–53 (8th Cir.1984). There can be no dispute that the record contains evidence favorable to Coleman. But there also is substantial evidence to support plaintiffs' substantive claims. Those claims thus were correctly submitted to the jury, whose task it was to resolve the conflicts in the evidence. We cannot say that the jury improperly performed this task or that its verdict lacks adequate evidentiary support.

## II. The Award of Punitive Damages

The trial court instructed the jury that:

4. We reject Coleman's argument that "plaintiffs' careless handling of the can bars recovery under the doctrine of strict liability." Brief of Appellant at 13. An undisputed fact of this case is that plaintiffs did not handle the fuel can at all; it was handled only by Scott McCarter. Even if plaintiffs' actions could be characterized as negligent, they would not bar recovery because "[c]ontributory negligence is not a defense to an action in strict liability." *Rogers,* 522 S.W.2d at 638. Furthermore, when Cole-

man deleted from its answer an allegation of fault on the part of plaintiffs, Coleman waived the affirmative defense of contributory fault, which, under Missouri law, is available to a defendant who can prove that: (1) the plaintiff knew the facts which created the danger; (2) the plaintiff comprehended and appreciated the danger; and (3) the plaintiff nevertheless voluntarily and unreasonably exposed himself to the risk. *Jarrell,* 666 S.W.2d at 833.

If you find the issues in favor of either or both plaintiffs, and award either or both plaintiffs compensatory damages, and if you believe, first, at the time defendant sold the fuel can, defendant *knew or should have known* of the defective condition and danger as submitted to you in these instructions, and, second, defendant thereby showed complete indifference to or conscious disregard for the safety of others, then in addition to any compensatory damages to which you might find one or both plaintiffs entitled, you may award each plaintiff, in whose favor you find the issues, an additional amount as punitive damages in such sum as you believe will serve to punish defendant and to deter defendant and others from like conduct.

Tr. at VII:87 (emphasis added). Coleman argues that this instruction does not correctly state the applicable law and that plaintiffs have not, as a matter of law, made out a submissible case on punitive damages. We agree.

■ Recovery of punitive damages in a strict products liability action has been authorized by the Missouri Court of Appeals where a plaintiff, "in addition to proving the conduct necessary to support the strict liability claim, can also establish a degree of fault in such conduct sufficient to justify punitive damages...." *Racer v. Utterman,* 629 S.W.2d 387, 396 (Mo.App.1981), *appeal dismissed, cert. denied,* 459 U.S. 803, 103 S.Ct. 26, 74 L.Ed.2d 42 (1982); *see also Roth v. Black & Decker, U.S., Inc.,* 737 F.2d 779 (8th Cir.1984); *Ferren v. Richards Manufacturing Company,* 733 F.2d 526 (8th Cir.1984) (both cases applying Missouri law).

■ Subsequent to the decision in *Racer v. Utterman,* the Missouri Supreme Court adopted Missouri Approved Jury Instruction (MAI) 10.04 along with the Notes on Use and MAI Committee's Comments relat-ed to that instruction. *See* Missouri Supreme Court Committee on Jury Instructions, *Missouri Approved Jury Instructions* XXI–XXIII (3d ed. Supp.1983). MAI 10.04 provides that punitive damages may be awarded in a strict liability action involving a defective product if the defendant *knew* of the alleged defective condition and danger at the time the defendant sold the product and if the defendant thereby showed complete indifference to or conscious disregard for the safety of others. *See id.* at 17. The MAI Committee's Comments state that "MAI 10.04 [was] drafted to submit the issue of punitive damages under the evidence detailed in the *Racer* opinion" and advise that an appropriate modification to MAI 10.04 should be made "[i]f the substantive law and evidence support a submission on a theory *other than actual knowledge* of the product defect...." *Id.* at 18 (emphasis added). These comments demonstrate that the MAI Committee interpreted *Racer v. Utterman* as requiring proof that the defendant sold the product with actual knowledge of the product's defect before a strict products liability plaintiff is entitled to recover punitive damages. By adopting MAI 10.04 and the comments thereto, the Missouri Supreme Court has sanctioned this interpretation of *Racer v. Utterman* as a definitive statement of Missouri law.

We have not found and plaintiffs have not cited a single strict products liability case decided by a Missouri court since *Racer v. Utterman* in which punitive damages have been awarded because the defendant *should have known* of the alleged product defect and danger and thereby showed complete indifference to or conscious disregard for the safety of others, *i.e.,* because the defendant had constructive knowledge of the product's defectiveness and dangerousness.[5] Thus, current Missouri substantive law cannot be said to permit recovery

---

5. A reference to constructive knowledge by the court in *Racer v. Utterman,* 629 S.W.2d at 396, should not be misconstrued as support for this proposition. When it made this reference, the court merely was pointing out certain elements of a negligent failure to warn claim. Further-more, contrary to plaintiffs' assertions, *Rinker v. Ford Motor Company,* 567 S.W.2d 655 (Mo.Ct. App.1978), is not authority for allowing punitive damages in this or any other strict products liability case. *See Vanskike,* 665 F.2d at 208 n. 18.

of punitive damages in a strict products liability case upon a theory of constructive knowledge of the product defect. In fact, three recent Missouri Court of Appeals decisions strongly indicate that proof of actual knowledge indeed is required. *See Love v. Deere and Company*, 684 S.W.2d 70, 77 (Mo.Ct.App.1985); *Sparks v. Consolidated Aluminum Company*, 679 S.W.2d 348, 354 (Mo.Ct.App.1984); *Lewis v. Envirotech*, 674 S.W.2d 105, 114 (Mo.Ct.App.1984).

■ We therefore hold that the trial court misstated Missouri law by including in its punitive damage instruction the language "or should have known." Moreover, although the remainder of the trial court's punitive damage instruction is a perfectly acceptable statement of the applicable law, there is nothing in the record to support giving it. There is no evidence, either direct or circumstantial, that Coleman actually knew of a defect in the cans in which its fuel was sold and that Coleman nevertheless sold the product with that actual knowledge. Thus there can be no showing that Coleman acted with complete indifference to or with conscious disregard for the safety of others. The punitive damage issue should not have been submitted to the jury.

### III. Rulings of the Trial Court

Coleman argues that two rulings of the trial court were erroneous, that it was prejudiced by these rulings, and, therefore, that it is entitled to a new trial. The court ruled that statements in a patent that was issued in 1871 were admissible under Rule 803(8)(C) of the Federal Rules of Evidence (public record and report exception to the hearsay rule). The court also ruled that Coleman could not introduce evidence to prove or argue that the supervening cause of the accident was an act of a third party rather than a product defect. We have examined these rulings and find that Coleman is not entitled to a new trial.

We express no opinion as to the admission into evidence under Rule 803(8)(C) of statements from the century-old patent. Coleman challenges this evidence because of its relation to the award of punitive damages in this case.[6] *See* Brief of Appellant at 23, 25; Reply Brief of Appellant at 13. Any discussion of this evidentiary ruling is unnecessary in light of our reversal of the punitive damage award on other grounds.

We are equally unpersuaded by Coleman's argument that the trial court's ruling on the supervening cause issue necessitates a new trial. Coleman characterizes as negligence and as a supervening cause of the accident in this case the failure of Scott McCarter's parents to comply with the warning on the fuel can to keep the can out of the reach of children. Coleman was told it could not argue this theory to the jury and cross-examination of plaintiffs' expert along these lines was not permitted. An offer of proof made out of the jury's hearing demonstrated that such cross-examination would have elicited from the witness a statement that the accident would not have occurred if the warning had been followed.

■ In a strict products liability case, where design defect and product misuse both contribute to cause an accident, the misuse cannot constitute a supervening cause if the misuse was foreseeable. *See Vanskike*, 665 F.2d at 195 (citing *Griggs v. Firestone Tire and Rubber Company*, 513 F.2d 851 (8th Cir.), *cert. denied*, 423 U.S. 865, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975) (negligent failure to warn case)); *Jarrell*, 666 S.W.2d at 836. This is true even if the act alleged to be a supervening cause is the negligence of a third party. *See Griggs*,

---

6. The patent contained, in essence, assertions of the patent applicant that many serious and fatal accidents are well known to have occurred due to the lack of flashback arresters on fuel cans. Plaintiffs introduced this evidence to support a constructive knowledge theory for awarding punitive damages; since there was no evidence that Coleman actually knew of the patent or of the alleged accidents summarized in it, plaintiffs used the patent to show that if the patent applicant knew in 1871 that fuel cans lacking flashback arresters were dangerous, Coleman should have known of the danger when it sold the fuel can in question.

513 F.2d at 861 (citing Restatement (Second) of Torts § 447(b)). Thus, under the applicable law, failure of the McCarters to keep the fuel can out of the reach of children—the misuse claimed by Coleman to have been the supervening cause of this accident—must have been unforeseeable in order for Coleman to prevail on its supervening cause theory.

 We see no reason for the trial court to have prohibited Coleman from arguing supervening cause to the jury. However, even if it was error for the trial court to do so, the error was harmless. The crucial evidence pertaining to Coleman's supervening cause theory was presented to the jury anyway, albeit in the context of the anticipated use/foreseeability issue which we have discussed *supra* at pp. 1302–03.[7] In fact, Coleman argued to the jury that the "guard to prevent [injury due to use of its fuel cans by children near sources of heat] is the instruction that tells you to keep [the can] out of the hands of children so that presumably parents will do that." Tr. at VII:45. Thus the jury considered the warning and the fact that the McCarters apparently failed to follow it before concluding that fuel cans foreseeably would be used by children near sources of heat. The jury's conclusion, which we have determined to be supported by the evidence, easily can be restated: it was foreseeable that fuel cans would not be kept out of the reach of children. Such foreseeable misuse cannot be a supervening cause.

The trial court's ruling on the supervening cause issue did not "erroneously [spare plaintiffs] the task of proving the causation element of their case." Reply Brief of Appellant at 10. Nor did it cause "the jury to believe that the causation issue would be subsumed in a finding of product defect." *Id.* at n. 4. The jury was instructed by the trial court that it had to find that the

design defect was the direct cause of plaintiffs' injuries in order to award plaintiffs actual damages. *See* Tr. at VII:86. Thus the jury was charged with determining causation in this case and a determination that the product defect caused plaintiffs' injuries is supported by the evidence.

## IV. Conclusion

The judgment below is affirmed with respect to the award of actual damages and is reversed with respect to the award of punitive damages.

HENLEY, Senior Circuit Judge, dissenting.

I agree with the majority opinion that there is adequate record evidence to support the jury's findings on liability for actual damages. I also agree that, under Missouri law, actual knowledge of the defective condition of the product is required to be proven before the imposition of punitive damages can be sustained. The submission of the punitive damages issue under the erroneous "should have known" standard justifies a new trial. The majority holds that this result is not possible, however, because there is no evidence that Coleman actually knew of the defect. It is here that the majority and I first part company.

I believe that the same evidence which goes to show that Coleman "should have known" of the defect also goes to support an arguable inference that Coleman actually knew of the defect. Knowledge, like other states of mind, can rarely, if ever, be proven directly. Rather, it is usually proven circumstantially through reasonable inferences drawn from evidence, as a whole. "Ordinarily the question of what inferences are deducible from the evidence is peculiarly a question for the jury, and it is only in rare instances that the court is justified in

---

7. Coleman argues that the trial court's ruling was not harmless error given the exclusion of the statement by plaintiffs' expert witness that the accident would not have occurred if the warning to keep the can out of the reach of children had been followed. This argument is

meritless. We do not believe that any testimony, let alone expert testimony, was necessary to show that the accident would not have occurred if this warning had been followed. Common sense would naturally dictate such a conclusion.

determining such question as a matter of law." *Schultz & Lindsay Construction Co. v. Erickson*, 352 F.2d 425, 430 (8th Cir.1965) (quoting *Smith v. Knutson*, 76 N.D. 375, 36 N.W.2d 323, 327 (1949)).

Here, plaintiffs proved that Coleman was aware that gasoline might be stored in its cans, that flame arrestors were used in the fuel can industry, and also that the phenomenon of flashback/explosion was known in the industry. A patent issued in 1871 specifically described the danger of flashback with fuel cans and described the effectiveness of flame arrestors in avoiding such occurrences. In fact, Coleman itself has used flame arrestors on its lanterns for some fifty to sixty years. In sum, Coleman's knowledge of the availability of flame arrestors, combined with its knowledge that flashback would occur in certain circumstances, and its knowledge that flame arrestors were used in the fuel can industry, arguably supports an inference that Coleman knew of the fuel can's defect and was completely indifferent to the dangers involved.

Of course, the above evidence does not *require* a finding of Coleman's knowledge and indifference. However, that is not the question. The question is whether the evidence is sufficient to submit the issue of punitive damages to a jury under a proper instruction. The evidence must be viewed in the light most favorable to the plaintiffs, giving them the benefit of all favorable inferences which reasonably could be drawn from the facts. *E.g., Jackson v. Prudential Insurance Company of America*, 736 F.2d 450, 453 (8th Cir.1984). Coleman's motion for a directed verdict or judgment n.o.v. should be denied if reasonable persons could differ as to the conclusions to be drawn from the evidence. *Id.* I am of the opinion that reasonable minds, viewing the record evidence, could infer Coleman's actual knowledge of the defective condition of its fuel cans and the danger of flashback associated with them. At least this court should not reject the inference as a matter of law until a trial jury and court have had opportunity to do so.

Because I would remand for a new trial on the issue of punitive damages, I would also require a new trial on the issues of liability and actual damages. A partial new trial "may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931). A partial new trial is inappropriate if the issues are so interwoven that they cannot be submitted independently without confusion or uncertainty. *Id.; see also McDonald v. Johnson & Johnson*, 722 F.2d 1370, 1388 (8th Cir.1983) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 219, 83 L.Ed.2d 149 (1984); *Ouachita Nat'l Bank v. Tosco Corp.*, 686 F.2d 1291, 1299 (8th Cir.1982), *modified on other grounds*, 716 F.2d 485 (1983) (en banc). Here, the issues of liability, actual and punitive damages appear to be so interwoven that a partial new trial cannot be had without confusion and uncertainty.

Indeed, given the view of the majority with respect to punitive damages, it is perhaps true as well that under that view a new trial of the issues of actual liability and damages is indicated. In light of the liberal $1,000,000.00 jury award, the intertwining nature of some of the evidence, the possible inflammatory effect of evidence, such as net worth of the defendant, and the erroneous "should have known" instruction, it appears likely that the verdict on actual damages may have been enhanced by general jury consideration of all the evidence including that which this court doubtless would now limit or exclude entirely in a trial of actual liability.

In sum, I would reverse and remand for a new trial on all issues. Since the majority does not follow this approach, I respectfully dissent.