**GOOD SAMARITAN HOSPITAL,
etc., et al., Appellants,**

v.

**Louis W. SULLIVAN, etc., Appellees.**

**Nos. 90–1641, 90–1642.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1990.

Decided Dec. 30, 1991.

Rehearing Denied, Feb. 7, 1992.

Carel T. Hedlund, Baltimore, Md., argued (Laura L. Katz, on the brief), for appellants.

John P. Schnitker, Washington, D.C., argued (Barbara C. Biddle and Ira C. Lupu, Washington, D.C., Gerard Keating and Marcus Christ, Baltimore, Md., on the brief), for appellees.

Before McMILLIAN and FAGG, Circuit Judges, and ARNOLD,* District Judge.

McMILLIAN, Circuit Judge.

Good Samaritan Hospital, Memorial Community Hospital, Memorial Hospital (Seward), Memorial Hospital of Dodge County, St. Mary's Hospital, and Mary Lanning Memorial Hospital (collectively appellants[1]) appeal from a final order entered in the District Court for the District of Nebraska. *Good Samaritan Hospital v. Sullivan,* No. CV88–L–523, 1990 WL 42393 (D.Neb. Feb. 16, 1990) (order and memorandum). The Secretary of Health and Human Services (Secretary) cross-appeals from this final order. In the district court, both sides agreed that summary judgment was appropriate because the facts were not in dispute, and the district court granted partial summary judgment in favor of each side. For reversal, appellants argue that (1) the Secretary's refusal to reclassify Memorial Community Hospital as an urban hospital is arbitrary and capricious, (2) the Provider Reimbursement Review Board improperly denied jurisdiction over three cost years, and (3) the district court erred in

granting relief that it did. For reversal, the Secretary argues that (1) this court lacks jurisdiction over Mary Lanning Memorial Hospital[2] and (2) the district court erred in allowing appellants a retroactive change in the prescribed methods of Medicare reimbursement. For the reasons discussed below, we affirm in part and reverse in part.

## I. BACKGROUND FACTS

### A. *Medicare Reimbursement Structure*

Under Part A of Medicare, health care providers, in this case hospitals, are reimbursed for providing medical services to Medicare patients. *See* Title XVIII of the Social Security Act, *as amended,* 42 U.S.C. § 1395 *et seq.* (the Medicare Act). Hospitals participate as "providers of services" by entering into an agreement with the Secretary. *Id.* § 1395x(u). Providers are reimbursed for the lesser of "reasonable costs" or the "customary charges" for services furnished to Medicare beneficiaries. *Id.* § 1395f(b)(1). "Reasonable cost" is defined as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." *Id.* § 1395x(v)(1)(A).[3] Reasonable cost is determined in accordance with regulations promulgated by the Secretary and these regulations

> may provide for determination of the costs of services on a per diem, per unit, per capita, or other basis, may provide for using different methods in different circumstances, may provide for the use of estimates of costs of particular items or services, [and] may provide for the establishment of limits on the direct or

---

* The Honorable Morris S. Arnold, United States District Judge for the Western District of Arkansas, sitting by designation.

1. Mary Lanning Memorial Hospital is not a party appellant in this case because we hold that we lack appellate jurisdiction over it as discussed below. Mary Lanning Memorial Hospital was a plaintiff below and remains a cross-appellee here.

2. The Secretary originally argued that we also lack jurisdiction over Memorial Community

Hospital, Memorial Hospital (Seward), Memorial Hospital of Dodge County and St. Mary's Hospital, but the government changed its position in its reply brief.

3. After October 1, 1983, providers are reimbursed under the Medicare Prospective Payment System (PPS). *See* 42 U.S.C. § 1395ww(d). This case involves pre–1983 cost years and thus PPS is inapplicable.

indirect overall incurred costs or incurred costs of specific items or services or groups of items or services.

*Id.* In addition, the Medicare Act requires the Secretary to "provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive." *Id.* § 1395x(v)(1)(A)(ii) (clause (ii)).

In 1972, Congress authorized the Secretary to promulgate regulations which establish limits on the costs to be recognized as reasonable. Pub.L. No. 92–603, 86 Stat. 1329 (1972). Pursuant to this statutory authority, the Secretary first promulgated regulations establishing limits on hospital inpatient general routine care in 1974. 20 C.F.R. § 405.460 (1975), *redesignated as* 42 C.F.R. § 413.30 (1990). These regulations establish specific cost limits based on factors including type of services furnished, geographical location, institutional size, nature and mix of services furnished, and type and mix of patients treated. 42 C.F.R. § 413.30(b) (1990). Providers can request an exemption or exception under specific statutory criteria and procedures. *See id.* § 413.30(e), (f) (1990).[4] These cost schedules are updated yearly. Initially, these cost schedules categorized hospitals by (1) whether they were located in a Standard Metropolitan Statistical Area (SMSA), (2) the per capita income of the location area and (3) bed size. SMSAs are used to distinguish urban and rural hospitals. Those hospitals located within a SMSA are considered urban and thus receive a higher per capita limit than rural hospitals (those located outside of SMSAs). *See* 44 Fed. Reg. 31,806 (1979). Changes to SMSA designations, based upon later census data, are applied solely to fiscal years following the effective date of the change.

In 1979, the Secretary promulgated new regulations to change one part of the cost limits. Rather than using area per capita

income to adjust for variations in wage levels, a wage index was developed. *Id.* To determine the wage index, the Bureau of Labor Statistics of the Department of Labor divided the total hospital wages paid in one year by the total number of hospital workers to arrive at an average monthly hospital wage. This data did not take into account the number of full or part-time workers at any given hospital until 1984 when Congress required the Secretary to conduct a study to develop a wage index that would adjust for part-time workers. A new wage index was applied prospectively effective May 1, 1986. Pub.L. No. 99–272, § 9103(a), 100 Stat. 156 (1986).

In order to receive reimbursement, a provider is required to file an annual cost report with a fiscal intermediary (such as Blue Cross). 42 C.F.R. § 413.20 (1990). The fiscal intermediary reviews the cost report, determines the amount of reimbursement due the provider, and issues a "notice of program reimbursement" (NPR). *Id.* If the provider is dissatisfied with the NPR, the provider can file, within 180 days of receiving the NPR, a request for a hearing before the Provider Reimbursement Review Board (PRRB). 42 U.S.C. § 1395oo(a). A PRRB decision that it lacks the authority to decide a question of law is considered a final agency decision and the provider may, within 60 days, seek judicial review. *Id.* § 1395oo(f)(1).

### B. Facts in the Present Case

Appellants are rural Nebraska hospitals who exceeded the Secretary's promulgated cost limits in the early 1980s and filed appeals to the PRRB challenging the NPRs for the following cost years: Good Samaritan Hospital, 1981, 1982, 1983; Memorial Community Hospital, 1980, 1981, 1982, 1983; Memorial Hospital (Seward), 1980, 1982, 1983; Memorial Hospital of Dodge County, 1981, 1982, 1983, 1984; St. Mary's Hospital, 1980, 1982, 1983; and Mary Lanning Memorial Hospital, 1981, 1982, 1983. Additionally, three hospitals, which were

---

**4.** Both appellants and the Secretary agree that none of these regulatory exceptions or exemp- tions is applicable in the present case.

parties to a prior group appeal, neglected to raise any issues concerning certain cost years, and therefore, the PRRB denied jurisdiction over the following cost years: Memorial Hospital (Seward), 1981; Memorial Hospital of Dodge County, 1980; and St. Mary's Hospital, 1981. Appellants challenged the fact that Medicare cost limits (1) did not account for the use of a high percentage of part-time employees, (2) did not permit rural hospitals to show they incurred the same costs as urban hospitals, and (3) were applied in a conclusive rather than a presumptive fashion. Memorial Community Hospital also challenged the denial of its request to be reclassified as an urban hospital.

Appellants claim that the wage-index regulations, by not accounting for part-time workers, disadvantage hospitals which employ a greater percentage of part-time workers than the average hospital. A hospital with a greater percentage of part-time workers will have a lower average monthly hospital wage. Because average monthly hospital wage is one factor used to determine the per diem limit for a given region, hospitals in that area will be disadvantaged. Appellants allege that rural Nebraska hospitals hire a greater percentage of part-time workers than the national average and thus they are disadvantaged by the Secretary's system. A study commissioned by appellants showed that an 11.04 percent adjustment factor applied to the wage index would correct for the failure to account for part-time employees. Following the Secretary's 1984 study of the disparity created by not distinguishing between full and part-time employees, the revised wage index (which went into effect in 1986) increased the rural Nebraska wage index by 11.25 percent. 50 Fed.Reg. 24,403 (1985). Appellants allege that a corrective factor should be applied to the cost years in question to correct for the disadvantage suffered by them prior to 1986.

As to the distinction between rural and urban hospitals, appellants allege that they are located so close to metropolitan areas that their wages were comparable to the wages of urban hospitals. Appellants allege that the classification of urban and rural hospitals is arbitrary and capricious. Appellants argue that they should be allowed to present evidence to show that they pay comparable wages and then should be reclassified as urban hospitals for the years in question.

The PRRB granted appellants' request for expedited judicial review, allowing appellants to take their challenge directly into district court. The district court, on cross-motions for summary judgment, ruled in favor of appellants insofar as it held that the cost limits may be applied only on a presumptive rather than a conclusive basis. The district court found that the Secretary had a statutory duty to make corrective adjustments under *St. Paul–Ramsey Medical Center v. Bowen*, 816 F.2d 417 (8th Cir.1987) (*St. Paul–Ramsey*). In doing so, the district court further ruled that *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (*Georgetown*), did not overrule, and was in fact consistent with, *St. Paul–Ramsey*. The district court remanded the case to the Secretary to determine under clause (ii) whether appellants are entitled to reimbursement of reasonable costs beyond the amount already determined as reasonable under the cost schedule. The district court upheld the Secretary's refusal to reclassify Memorial Community Hospital as an urban hospital for the years 1980 to 1983 and the PRRB's denial of jurisdiction over the single-year cost limit challenges of Memorial Hospital (Seward), Memorial Hospital of Dodge County and St. Mary's Hospital.

Appellants then appealed to this court claiming error in the district court's (1) refusal to reclassify Memorial Community Hospital, (2) denial of jurisdiction with respect to single-cost years, and (3) remedy. The Secretary cross-appealed claiming (1) Mary Lanning Memorial Hospital lacked jurisdiction to appeal and (2) the district court erred in finding that the Secretary's methods of provider reimbursement are presumptive only and that appellants are entitled to relief under clause (ii).

## II. JURISDICTION

There is a threshold issue of jurisdiction as to Memorial Community Hospi-

tal, Memorial Hospital (Seward), Memorial Hospital of Dodge County, St. Mary's Hospital, and Mary Lanning Memorial Hospital because they were not named in the Notice of Appeal which stated in part that "[n]otice is hereby given that Plaintiffs, Good Samaritan Hospital, et al., hereby appeal." Rule 3(c) of the Federal Rules of Appellate Procedure as construed in *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988) (*Torres*), requires that each party be named in the notice of appeal and the use of "et al." is insufficient notice of appeal. *Id.* at 318, 108 S.Ct. at 2409; *see Wise v. Parkman*, 932 F.2d 745 (8th Cir.1991); *United States v. Schneider*, 926 F.2d 777 (8th Cir.1991) (*Schneider*); *Goos v. ICC*, 911 F.2d 1283 (8th Cir.1990). Therefore, the use of "et al." in the notice of appeal does not give this court jurisdiction over any of the hospitals except Good Samaritan Hospital.

█ In spite of the strict jurisdictional rule established in *Torres*, we hold that we have jurisdiction over Memorial Community Hospital, Memorial Hospital (Seward), Memorial Hospital of Dodge County, and St. Mary's Hospital, but dismiss the appeal of Mary Lanning Memorial Hospital for lack of jurisdiction. The *Torres* Court recognized that "if a litigant files papers in a fashion that is technically at variance with the letter of a procedural rule, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires." 487 U.S. at 316–17, 108 S.Ct. at 2408–09 (citation omitted). In the present case, appellants filed an Appeal Information Form at the same time as their notice of appeal (thus within the sixty days for appeal). In this Appeal Information Form, appellants set forth their issues on appeal (emphasis added):

> Whether the District Court erred in determining that the Defendant's refusal to reclassify *Memorial Community Hospital* as an urban hospital for the period

prior to June 1983, was not arbitrary and capricious.

> Whether the District Court erred in dismissing the claims of *St. Mary's Hospital* for fiscal year 1981, *Memorial Hospital (Seward)* for fiscal year 1981, and *Memorial Hospital of Dodge County* for fiscal year 1980.

Therefore, the issue in this case becomes whether this Appeal Information Form is "a functional equivalent of what the rule requires." We hold that it is. The Appeal Information Form was filed within the time required for the notice of appeal and provided the Secretary with clear notice that the four hospitals listed are appealing the district court's order. While this is a case of first impression in this circuit, we agree with other circuits which have held that additional documents filed within the statutory period for notices of appeal are the functional equivalent of a notice of appeal and, therefore, serve as a notice of appeal. The Third Circuit in *Dura Systems, Inc. v. Rothbury Inv., Ltd.*, 886 F.2d 551, 555 (3d Cir.1989), *cert. denied*, 493 U.S. 1046, 110 S.Ct. 844, 107 L.Ed.2d 838 (1990), held that a Consent Order could serve as the functional equivalent of what Rule 3(c) required when filed within the time for filing an appeal under Fed.R.App.R. 4. *Accord Warfield v. Fidelity & Deposit Co.*, 904 F.2d 322 (5th Cir.1990). The Fifth Circuit explained that the defect in the notice of appeal of not specifically naming the parties appealing can be cured "by filing a supporting memorandum or some other paper which contains the name of each appellant." *Id.* at 325 (citations omitted).[5] Moreover, this approach is consistent with Eighth Circuit precedent. In *Schneider*, this court found a lack of jurisdiction because "the 'certificate of interested persons' [which listed each appellant not named on the notice of appeal] was submitted after the appeal time had expired." 926 F.2d at 778.

█ We hold that when the collateral document naming the specific parties is

---

5. The Seventh Circuit takes a different approach and does not adopt this collateral document rule and thus requires that each party be named in the notice of appeal. *Allen Archery, Inc. v. Precision Shooting Equip., Inc.*, 857 F.2d 1176 (7th Cir.1988) (per curiam). We decline to adopt the approach of the Seventh Circuit.

filed within the appeal time, jurisdiction exists over those parties. We therefore hold that we have jurisdiction over Good Samaritan Hospital as well as Memorial Community Hospital, Memorial Hospital (Seward), Memorial Hospital of Dodge County, and St. Mary's Hospital. The appeal of Mary Lanning Memorial Hospital is dismissed for lack of jurisdiction.

## III. ISSUES ON THE MERITS

■ We review the district court's grant of summary judgment de novo. We thus apply the same standard of review as the district court, that is, whether the Secretary's actions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Hennepin County v. Sullivan*, 883 F.2d 85, 91 (D.C.Cir.1989) (*Hennepin County*), *cert. denied*, 493 U.S. 1043, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990).

### A. Scope of Secretary's Duty under clause (ii)

Appellants insist that the Medicare cost limits for the cost years in question did not reimburse their reasonable costs as required under 42 U.S.C. § 1395x(v)(1)(A). Appellants urge this court to affirm the district court's findings that the cost limits are to be applied presumptively and that providers are entitled under *St. Paul–Ramsey* to suitable retroactive corrective adjustments where the cost limits methodology fails to reimburse their actual reasonable costs. On cross-appeal, the Secretary argues that the district court erred in relying on *St. Paul–Ramsey* because that decision has been overruled by the Supreme Court in *Georgetown*. The Secretary claims that clause (ii) only authorizes year-end book-balancing, not retroactive modifications to the cost limits rules.

Because the district court remanded the claims of all six hospitals to the Secretary for further proceedings to determine if they were entitled to additional reimbursement for reasonable costs, Mary Lanning Memorial Hospital remains a cross-appellee for the limited purposes of this issue. We will continue to use the term "appellants"

for the cross-appellees, but Mary Lanning Memorial Hospital is included only for the limited purpose of the clause (ii) analysis.

■ Clause (ii) requires that regulations "provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive." 42 U.S.C. § 1395x(v)(1)(A)(ii). We interpreted this statute in *St. Paul–Ramsey* and concluded that cost limits were only presumptive and "that § 1395x(v)(1)(A) imposes a statutory duty upon the Secretary *whenever* the chosen method of cost calculation fails to adequately reimburse all reasonable costs." 816 F.2d at 420 (citations omitted) (emphasis in original).

Our interpretation of clause (ii) in *St. Paul–Ramsey* was overruled by the Supreme Court in *Georgetown*. *Georgetown* presented the question "whether the Secretary may exercise this rulemaking authority to promulgate cost limits that are retroactive." 488 U.S. at 206, 109 S.Ct. at 470. In 1983, the Secretary's 1981 wage-index rule was struck down for violating the notice and comment provisions of the Administrative Procedure Act. *Id.* After following the proper procedures, the Secretary enacted the wage-index rule in 1984 but tried to apply it retroactively to 1981. The Supreme Court held that clause (ii) does not provide the "authority for the retroactive promulgation of cost-limit rules." *Id.* at 209, 109 S.Ct. at 472. The Court explained that

clause (ii) directs the Secretary to establish a procedure for making case-by-case adjustments to reimbursement payments where the regulations prescribing computation methods do not reach the correct result in individual cases. The structure and language of the statute require the conclusion that the retroactivity provision applies only to case-by-case adjudication, not to rulemaking.

*Id.* (footnote omitted). The Court drew a distinction between clause (i) of § 1395x(v)(1)(A) which speaks of "providers" and clause (ii) which uses the term "a

provider." "The distinction suggests that clause (ii), rather than permitting modifications to the cost-method rules in their general formulation, is intended to authorize case-by-case inquiry into the accuracy of reimbursement determinations for individual providers." *Id.* at 210, 109 S.Ct. at 472. Finally, the Court concluded that clause (ii) does not permit changes in the methods used to reimburse costs, but only corrective adjustments to the aggregate amounts.

> [C]lause (ii) speaks in terms of adjusting the aggregate reimbursement amount computed by one of the methods of determining costs.... [N]othing in clause (ii) suggests that it permits changes in the *methods* used to compute costs; rather, it expressly contemplates corrective adjustments to the *aggregate amounts* of reimbursement produced pursuant to those methods.

*Id.* at 211, 109 S.Ct. at 473 (emphasis in original). Therefore, clause (ii) merely allows a year-end book balancing of the monthly installments with the aggregate amount due for the year. *See id.* at 213, 109 S.Ct. at 474 (citations omitted).

■ Appellants claim that they are not requesting a change in the method of calculating reimbursement, but merely want their aggregate reimbursements adjusted because the flaws in the existing methodology caused underreimbursement of their reasonable costs. Appellants claim that this does not amount to change of methodology or a retroactive change in the cost limit regulations as forbidden by *Georgetown.*

We disagree. Appellants are asking for retroactive rule changes, not merely the year-end book balancing allowed in *Georgetown.* Appellants do not claim that the Secretary inaccurately applied the cost methodology in place during the cost years in question. Instead, appellants want the methodology changed to correct what they believe are inequalities in the system. While they claim this is merely case-by-case analysis, it is not. Appellants are asking this court to order the Secretary to retroactively adjust cost limits for the number of part-time workers. Such relief would

amount to a retroactive change in the *methods* used to compute costs that, after *Georgetown,* is invalid. Clause (ii) does not allow this court to reevaluate the appropriateness of the cost limit regulations, but only to reevaluate the calculations made pursuant to those regulations. *See Hennepin County,* 883 F.2d at 93.

The D.C. Circuit faced a similar situation in *Hennepin County* where a hospital sought additional reimbursement for medical education expenses. The hospitals claimed that because of its large medical education program, its expenses exceeded those of other hospitals and cited *St. Paul–Ramsey* in support. *Id.* at 90. The court rejected the argument of hospitals and noted "that *St. Paul–Ramsey* violated the rule against retroactive rulemaking." *Id.* The court explained that the hospital had received all that it was entitled to under the existing methodology, and that "[s]ection 1395x(v)(1)(A)(ii) is not a vehicle through which Medicare providers may get a 'second bite at the apple.'" *Id.* at 92. *Accord Sierra Medical Center v. Sullivan,* 902 F.2d 388 (5th Cir.1990). Appellants here are asking this court for a second bite at the apple because they feel cheated by the cost limit regulations. Clause (ii) does not allow such a result.

### B. Cost Limit Rules' Validity

■ All appellants, during the years in question, were located outside of designated SMSAs and were thus classified as rural hospitals for the purposes of determining cost limits. They received a lower cost limit than hospitals within SMSAs and appellants claim they must compete with urban hospitals for staff. Appellants argue that the cost limit regulations are arbitrary and capricious because they fail to account for the use of part-time employees and use the SMSA designations as the sole means by which a hospital can be designated as an urban hospital. Appellants allege that the percentage of part-time employees in rural Nebraska hospitals was 44 percent while the national average was only 26 percent. Appellants claim that the Secretary knew of this inherent distortion in the wage index methodology, but did nothing to cor-

rect it until Congress forced the Secretary to do so in 1984. *See* Pub.L. No. 98–369, § 2316(a), 98 Stat. 1081 (1984).

We disagree with appellants and find the cost limit rules reasonable and valid. Simply because the Secretary later altered the wage index to account for part-time employees does not mean that the limits prior to the change are invalid. *See City of Austin v. Heckler,* 753 F.2d 1307, 1315 (5th Cir.1985). To so hold would simply discourage the Secretary from changing and improving the regulations. At the time the regulations were in place, the Secretary claims that they were based upon the latest available data. *See* 44 Fed.Reg. 31,807 (1979). There is nothing arbitrary or capricious about the cost limit methodology used by the Secretary. Both the wage index and the rural/urban distinction were based on objective data and regulations, and we hold the SMSA-based cost limit regulations are not arbitrary or capricious.

### C. Classification of Memorial Community Hospital

■ Appellant Memorial Community Hospital (MCH) appeals the district court's affirmance of the Secretary's denial to reclassify it as an urban hospital for the years 1980 to 1983. Data from the 1980 census shows MCH located within the Omaha SMSA, but MCH's reclassification as an urban hospital was not effective until June 30, 1983. Therefore, MCH argues that because the census data shows that it had been operating as an urban hospital at least since 1980, it was arbitrary and capricious for the Secretary to deny the retroactive reclassification. We agree with the district court that to reclassify MCH as an urban hospital would violate the prohibition against across-the-board retroactive modifications in *Georgetown.* We therefore affirm the district court on this issue.

6. All of the cases on which Memorial Community Hospital relies are pre-*Georgetown* cases. Beyond that distinction, the two main cases deal with initial SMSA determinations and the use of different criteria in different parts of the county. *Addison Gilbert Hosp. v. Blue Cross Assoc./Blue Cross of Mass.,* Medicare & Medicaid Guide (CCH) ¶ 30,783 (HCFA Nov. 10, 1980);

MCH argues that reclassification is required so that it is reimbursed for its reasonable costs. Additionally, MCH alleges this is not retroactive rulemaking because it is only requesting a case-by-case adjustment to its aggregate reimbursement, not an across-the-board change.[6] MCH is mischaracterizing its request. MCH is asking this court to engage in retroactive rulemaking. If the Secretary had to reclassify MCH based on the 1980 census data, then the Secretary would also have to retroactively reclassify all hospitals which changed SMSA classification as a result of the 1980 census data. This would amount to retroactive rulemaking which is forbidden under *Georgetown.*

### D. PRRB Denial of Jurisdiction

The PRRB denied jurisdiction over the appeals of Memorial Hospital (Seward) for fiscal year 1981, Memorial Hospital of Dodge County for fiscal year 1980, and St. Mary's Hospital for fiscal year 1981 on the ground that the cost limit appeals were not filed within 180 days of the NPR as required by 42 U.S.C. § 1395oo(a)(3). The district court affirmed the decision of the PRRB. These three appellants seek to raise claims identical to those raised in the other cost years appealed. Therefore, because we denied relief for the cost years properly appealed, we need not reach this jurisdictional issue. Even if jurisdiction existed, the underlying claims would be denied.

### E. Remedy

Appellants also challenge the relief granted by the district court. Appellants argue that the district court should have ordered the Secretary to apply an 11.25 percent adjustment factor to account for the disparity in part-time workers instead of just remanding the case for a determination of the appropriate reimbursement.

*Anna Jacques Hosp. v. Blue Cross Assoc./Blue Cross of Mass.,* Medicare & Medicaid Guide (CCH) ¶ 30,025 (PRRB July 16, 1979), *aff'd,* Medicare & Medicaid Guide (CCH) ¶ 30,781 (HCFA Sept. 14, 1979). The analysis of these cases, therefore, does not apply to reclassification based on new data and the retroactive application of that reclassification.

Because we have decided that appellants are entitled to no relief, this issue is moot.

## IV. CONCLUSION

Accordingly, we dismiss the appeal of Mary Lanning Memorial Hospital for lack of jurisdiction. We reverse the district court's grant of summary judgment in favor of appellants and hold that appellants are entitled to no corrective adjustment. We affirm the district court's grant of summary judgment in favor of the Secretary (1) denying MCH retroactive reclassification as an urban hospital and (2) denying jurisdiction to Memorial Hospital (Seward) for fiscal year 1981, Memorial Hospital of Dodge County for fiscal year 1980, and St. Mary's Hospital for fiscal year 1981.