821 F.2d 750
 261 U.S.App.D.C. 262, 56 USLW 2035,
18 Soc.Sec.Rep.Ser. 136,
Medicare&Medicaid Gu 36,365
 GEORGETOWN UNIVERSITY HOSPITAL, et al.
v.
Otis R. BOWEN, Secretary of Health and Human Services, Appellant.
HOWARD UNIVERSITY, as Howard University Hospital, et al.
v.
Otis R. BOWEN, Secretary of Health and Human Services, Appellant.
TUCSON GENERAL HOSPITAL
v.
Otis R. BOWEN, Secretary of Health and Human Services, Appellant.
 Nos. 86-5381 to 86-5383.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued March 30, 1987.
Decided June 26, 1987.
Rehearing Denied Sept. 1, 1987.
 
 Mark W. Pennak, Atty., Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty. and John F. Cordes, Atty., Dept. of Justice, Washington, D.C., were on brief, for appellant.
 Ronald N. Sutter, Washington, D.C., for appellees.
 Before EDWARDS and STARR, Circuit Judges, and SWYGERT,* Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit.
 Opinion for the Court filed by Circuit Judge EDWARDS.
 HARRY T. EDWARDS, Circuit Judge:
 
 
 1
 In 1979, the Secretary of the Department of Health, Education and Welfare,[1] acting pursuant to section 223(b) of the Social Security Amendments of 1972,[2] promulgated a number of "cost limit" rules applicable to providers of routine inpatient hospital Medicare services. See 44 Fed.Reg. 31,806 (1979). The rules established limits on the amount of money that providers would be able to claim from the federal government as reimbursement for the costs incurred in the provision of Medicare services. Among the rules promulgated by the Secretary was a "wage index" formula, which would be used to calculate the cap on reimbursable wage costs. By its terms, the wage-index rule was to apply prospectively to cost accounting periods beginning on or after July 1, 1979. Id. at 31,806.
 
 
 2
 Two years later, in 1981, the Secretary modified the wage-index formula to exclude certain data that, in his view, reduced the accuracy of the index. See 46 Fed.Reg. 33,637, 33,639 (1981). The Secretary did so, however, without allowing for a notice and comment period. The appellees--seven non-profit hospitals that provide routine inpatient Medicare services--challenged the Secretary's action in the District Court on the ground that notice and an opportunity for comment were required by section 553 of the Administrative Procedure Act ("APA"), 5 U.S.C. Sec. 553 (1982). The trial court agreed with the appellees' contention and struck down the rule as violative of the APA. See District of Columbia Hosp. Ass'n v. Heckler, No. 82-2520, slip op. (D.D.C. Apr. 29, 1983), reprinted in Joint Appendix ("J.A.") 44-64; Saint Cloud Hosp. v. Heckler, No. 83-0223, slip op. (D.D.C. May 2, 1983), reprinted in J.A. 65-66. No appeal was taken from this ruling, and the Secretary, acting through fiscal intermediaries,[3] settled the appellees' accounts using the 1979 wage-index rule.
 
 
 3
 Three years later, the Secretary "reissued" the 1981 wage-index rule, this time adhering to the notice and comment procedures mandated by the APA. See 49 Fed.Reg. 46,495 (1984). Like the 1979 and 1981 cost-limit rules, the 1984 rule was promulgated under the authority of section 223(b). See Proposed Notice, 49 Fed.Reg. 6175, 6176 (1984). Unlike the 1979 and 1981 rules, however, the 1984 rule was given retroactive effect. Specifically, the rule was to cover cost accounting periods beginning on or after July 1, 1981--precisely those cost accounting periods that would have been covered prospectively by the Secretary's 1981 rule had that rule been promulgated in conformity with the procedural requirements of the APA. Pursuant to the retroactive rule, the fiscal intermediaries recalculated the amount owing to the appellees and recouped an amount in excess of two million dollars.
 
 
 4
 The appellees again filed suit in the District Court, challenging both the rule's retroactive application and its substantive validity. The District Court held that the reissued wage index was invalid insofar as it was applied to recoup monies from the appellees, and ordered the Secretary to reimburse the appellees with interest. See Georgetown Univ. Hosp. v. Bowen, No. 85-1845, slip op. at 24 (D.D.C. Apr. 11, 1986), reprinted in J.A. 94, 117. In reaching this result, the District Court principally concluded that the retroactive application of the rule was barred by the equitable principles enumerated by this circuit in Retail, Wholesale & Department Store Union v. NLRB ("Retail Union "), 466 F.2d 380 (D.C.Cir.1972).[4]
 
 
 5
 We agree with the District Court that the Secretary's retroactive application of the 1984 cost-limit rule cannot stand, but we base our conclusion solely on the applicable provisions of the APA and the Medicare Act, and not on the equitable balancing test adopted by this circuit in Retail Union. The principles enunciated in Retail Union govern only those situations where a new policy is announced in the course of an administrative adjudication and applied retroactively to the participants in that adjudication. It does not apply in those situations where a "legislative" rule is promulgated in accordance with the rulemaking procedures set forth in the APA. In these latter situations, a reviewing court must look both to the APA and to the agency's organic statute to discern the scope of the agency's rulemaking authority. When we do so in the instant case, we find that the Secretary's actions were clearly precluded both by the APA and the Medicare Act. Accordingly, we affirm the judgment of the District Court.
 
 I. BACKGROUND
 A. Statutory Background
 
 6
 The Medicare program, which subsidizes the medical care of the elderly and the infirm, was enacted by Congress in 1965 as Title XVIII of the Social Security Act. See Social Security Amendments of 1965, Pub.L. No. 89-97, 79 Stat. 286. Under the program, providers of covered services, such as hospitals and nursing homes, are generally reimbursed for "the lesser of (A) the reasonable cost of such services, as determined under section 1395x(v) ... or (B) the customary charges with respect to such services." 42 U.S.C. Sec. 1395f(b)(1) (1982 & Supp. III 1985). The instant case concerns only the "reasonable cost" provisions of 42 U.S.C. Sec. 1395x(v).
 
 
 7
 As amended in 1972, section 1395x(v)(1)(A) defines "reasonable cost" as the "cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." The statute, however, does not require the Secretary to calculate the reasonable cost of Medicare services on a provider-by-provider basis. Rather, the Secretary is empowered to estimate the reasonable cost of providers by issuing regulations of general applicability. These regulations--denominated by statute as the "methods to be used ... in determining ... costs"--are presumed to measure accurately that proportion of a provider's total costs that are attributable to the efficient treatment of Medicare beneficiaries. However, the Secretary is empowered by section 1395x(v)(1)(A)(ii) to provide in his regulations "for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive."[5]
 
 
 8
 Prior to the 1972 amendments to section 1395x(v)(1)(A), the Secretary's ability to determine accurately the reasonable cost incurred by Medicare providers was somewhat limited. As the statute was originally drafted, the Secretary was empowered to establish cost accounting "methods" that would separate a provider's Medicare-related costs from its non-Medicare related costs.[6] However, the Secretary was not authorized to promulgate regulations determining--on a prospective basis--what level of Medicare-related costs would be considered "reasonable," and hence reimbursable.[7]
 
 
 9
 To remedy this perceived deficiency in the statutory scheme, Congress amended section 1395x(v)(1)(A) in 1972 to authorize the Secretary to promulgate regulations establishing "limits on the direct or indirect overall incurred costs or incurred costs of specific items or services or groups of items or services to be recognized as reasonable based on estimates of the costs necessary in the efficient delivery of needed health services." See Social Security Amendments of 1972, Pub.L. No. 92-603, Sec. 223(b), 86 Stat. 1329, 1393. In amending the statute, both Houses of Congress made clear their intent that this new authority was to be exercised on a prospective basis only: "[The authority] to set limits on costs ... would be exercised on a prospective, rather than retrospective, basis so that the provider would know in advance the limits to Government recognition of incurred costs and have the opportunity to act to avoid having costs that are not reimbursable." Senate Report at 188; House Report at 83, reprinted in 1972 U.S.CODE CONG. & ADMIN.NEWS at 4989, 5070. Thus, by virtue of this amendment, the Secretary's statutory authority to establish "methods of determining costs" extends to the promulgation of prospective "cost limit" rules. See Regents of the Univ. of Cal. v. Heckler, 771 F.2d 1182, 1189 (9th Cir.1985) ("The 1972 amendments, in authorizing the Secretary to adopt cost limits, merely added another method of cost calculation to those already recognized as legitimate by the statute.").
 
 B. Factual Background
 
 10
 The cost-limit rule at issue in this case was first promulgated by the Secretary in 1979, explicitly pursuant to his statutory authority "to set prospective limits on the costs that are reimbursed under Medicare." 44 Fed.Reg. 31,806, 31,806 (1979). The rule, which governed only the provision of routine inpatient hospital services,[8] established a wage-index formula to be used to calculate the cap on reimbursable wage costs. The wage index for an individual hospital was to be calculated by dividing the "local" average hospital wage by the "national" average hospital wage.[9] Bureau of Labor Statistics ("BLS") data was to be used in calculating the applicable indexes. See id. at 31,807-08.
 
 
 11
 In 1981, the Secretary made an adjustment to the formula used to calculate the wage indexes. Specifically, the Secretary decided to exclude data on the wages paid by federally-owned hospitals. See 46 Fed.Reg. 33,637, 33,639 (1981). The Secretary reasoned that the wage-index formula--which was designed to measure variations in local wage rates--would be more accurate without the inclusion of this wage data, because federally-owned hospitals typically paid their employees according to national rather than local wage rates. Id. at 33,639. The Secretary made this revision in his cost-limit rule without allowing for a notice and comment period.
 
 
 12
 The appellees filed two separate actions in the District Court seeking to overturn the rule on the ground that the Secretary had failed to comply with the procedural requirements of section 553 of the APA, 5 U.S.C. Sec. 553 (1982). The trial court found in favor of the appellees and invalidated the rule. See District of Columbia Hosp. Ass'n v. Heckler, No. 82-2520, slip op. (D.D.C. Apr. 29, 1983), reprinted in J.A. 44-64; Saint Cloud Hosp. v. Heckler, No. 83-0223, slip op. (D.D.C. May 2, 1983), reprinted in J.A. 65-66. The Secretary filed an appeal from the trial court's ruling, but voluntarily dismissed the appeal on September 1, 1983. Pursuant to the trial court's decision, the fiscal intermediaries settled the appellees' accounts using the Secretary's original wage-index formula, i.e., the wage-index formula that included federal-hospital data.
 
 
 13
 In February of 1984, the Secretary published a Notice of Proposed Rulemaking in which he proposed to "reissue" the 1981 wage-index rule. 49 Fed.Reg. 6175 (1984). Although the notice explicitly stated that the Secretary was authorized by statute to establish "prospective" cost-limit rules, the "reissued" rule was to apply retroactively to cost accounting periods dating back to July of 1981. Id. In other words, the rule was to apply to cost accounting periods that would have been covered prospectively by the Secretary's 1981 rule had that rule been promulgated in accordance with the procedural requirements of the APA.
 
 
 14
 After a comment period, the Secretary published a final notice announcing his decision to "reissue" the 1981 wage-index rule. 49 Fed.Reg. 46,495 (1984). In rejecting the contention of one commenter that he was without authority to promulgate a retroactive rule, the Secretary opined that the rule was not truly "retroactive" in nature, because hospitals were on notice in 1981 that he intended to exclude federal-hospital data from the wage index. Id. at 46,49 7. Under the circumstances, the Secretary viewed the "retroactive" rule as a legitimate attempt to correct the procedural defect that had prompted the District Court to invalidate the rule in the first instance. Id.
 
 
 15
 Pursuant to the rule, the Secretary instructed the fiscal intermediaries to reopen earlier cost accounting periods and recalculate the amount owing to the appellees using a wage-index formula that excluded federal-hospital data. The fiscal intermediaries did so, recouping an amount in excess of two million dollars from the seven appellee hospitals. The appellees again filed suit in the District Court, which invalidated the Secretary's action on the ground that retroactive application of the 1984 rule violated the equitable principles enunciated by this court in Retail Union. See Georgetown Univ. Hosp. v. Bowen, No. 85-1845, slip op. at 17-22 (D.D.C. Apr. 11, 1986), reprinted in J.A. 94, 110-15. The Secretary filed this appeal.
 
 II. ANALYSIS
 
 16
 A. The Secretary's Retroactive Rule Was Barred by the APA
 
 
 17
 In its opinion, the District Court found that both the APA and the Medicare Act appeared to preclude the Secretary from promulgating a retroactive cost-limit rule. However, the court declined to rest its judgment on that ground. Perceiving conflicting signals from Congress on the question of the Secretary's statutory authority, see note 4 supra, the trial court turned to this circuit's decision in Retail Union, where we articulated certain equitable considerations relevant to the question whether an agency may give retroactive effect to new policies adopted in the course of adjudication.[10] Based on the considerations enumerated in Retail Union, the trial court held that the Secretary's rule was invalid insofar as it was applied to recoup monies from the appellees.
 
 
 18
 We uphold the judgment of the District Court, but for reasons distinct from those identified in Retail Union. In Retail Union, the court was careful to distinguish between new policies adopted in the course of adjudication, and rules adopted pursuant to rulemaking procedures under the APA. Policies adopted in the course of adjudication, the court held, may be applied retroactively, unless the inequities produced by retroactive application are not counterbalanced by sufficiently significant statutory interests. See 466 F.2d at 390; cf. Yakima Valley Cablevision, Inc. v. FCC, 794 F.2d 737, 745-46 (D.C.Cir.1986) (noting the "troubling nature" of retroactive policymaking, and observing that this court, beginning with Retail Union, "has developed factors to guide our determination of whether an agency may give retroactive effect to a new policy developed in adjudication"). The court in Retail Union went on to observe, however, that Congress had devised an "alternative procedure," i.e., rulemaking under the APA, by which the inequities of retroactive policymaking could be avoided altogether. 466 F.2d at 388 (emphasis added). The court made clear that a balancing of the equities is unnecessary in those situations where this "alternative procedure" is utilized, because rules adopted pursuant to rulemaking procedures under the APA are to be "prospective in application only." Id. (citing the definitional section of the APA, 5 U.S.C. Sec. 551 (1982), which distinguishes a "rule" from an "adjudication," and defines the former as "an agency statement of general or particular applicability and future effect " (emphasis added)); cf. SEC v. Chenery Corp., 332 U.S. 194, 202, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947) (distinguishing between the "quasi-legislative promulgation of [general] rules to be applied in the future," and adjudicatory orders that may, in appropriate circumstances, be given retroactive effect); Wisconsin Gas Co. v. FERC, 770 F.2d 1144, 1166 (D.C.Cir.1985) (distinguishing between trial-type procedures and "notice and comment rulemaking, [which is] particularly appropriate for determination of legislative facts and policy of general, prospective applicability"), cert. denied, --- U.S. ----, 106 S.Ct. 1968, 90 L.Ed.2d 653 (1986); Telocator Network of America v. FCC, 691 F.2d 525, 551 (D.C.Cir.1982) (same); PBW Stock Exchange, Inc. v. SEC, 485 F.2d 718, 732 (3d Cir.1973) ("[R]ules ordinarily look to the future and are applied prospectively only...."), cert. denied, 416 U.S. 969, 94 S.Ct. 1992, 40 L.Ed.2d 558 (1974).[11]
 
 
 19
 The instant case does not in any way involve a new agency policy articulated in the course of adjudication. Rather, it involves a legislative rule adopted by the Secretary pursuant to the notice and comment procedures of the APA, 5 U.S.C. Sec. 553 (1982). As recognized in Retail Union itself, the APA requires that legislative rules be given future effect only. Because of this clear statutory command, equitable considerations are irrelevant to the determination of whether the Secretary's rule may be applied retroactively; such retroactive application is foreclosed by the express terms of the APA.
 
 
 20
 In his final rulemaking notice, the Secretary suggested that a retroactive rule was warranted under the circumstances of this case to correct what was simply a "procedural defect" in his previous rule. See 49 Fed.Reg. 46,495, 46,497 (1984). It is clear, however, that this proffered exception to the requirement that legislative rules be prospective in effect only is completely at odds with basic tenets of administrative law. This circuit has previously held that the effect of invalidating an agency rule is to "reinstat[e] the rules previously in force." Action on Smoking & Health v. CAB, 713 F.2d 795, 797 (D.C.Cir.1983) (emphasis added); accord Menorah Medical Center v. Heckler, 768 F.2d 292, 297 (8th Cir.1985); Abington Memorial Hosp. v. Heckler, 750 F.2d 242, 244 (3d Cir.1984), cert. denied, --- U.S. ----, 106 S.Ct. 180, 88 L.Ed.2d 149 (1985). Accordingly, when the District Court vacated the Secretary's 1981 wage-index rule, it necessarily reinstated the Secretary's 1979 rule, which required the Secretary to reimburse providers using a formula that included federal-hospital data. Well aware of the import of the District Court's ruling, the Secretary reimbursed the appellee hospitals using the 1979 wage-index formula. The Secretary's 1984 rule obviously can have no application to cost accounting periods that were, by virtue of the District Court's ruling, governed by the Secretary's 1979 rule. Cf. Greene v. United States, 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964) (because 1955 regulation was in effect when the petitioner's claim to monetary compensation was asserted, the government could not compel the petitioner to establish his entitlement to compensation under a revised 1960 regulation).
 
 
 21
 The Secretary's suggestion that retroactive rulemaking is permissible to remedy a procedural defect in a rule would, if accepted, make a mockery of the provisions of the APA. Obviously, agencies would be free to violate the rulemaking requirements of the APA with impunity if, upon invalidation of a rule, they were free to "reissue" that rule on a retroactive basis. If an agency rule is invalidated on procedural grounds, the agency must, of course, be given an opportunity to correct the procedural defect and promulgate a new rule. See, e.g., Action on Smoking & Health, 713 F.2d at 798. However, both the express terms of the APA and the integrity of the rulemaking process demand that the corrected rule, like all other legislative rules, be prospective in effect only.
 
 
 22
 B. The Secretary's Retroactive Rule is Also Inconsistent With the Medicare Act
 
 
 23
 Although Congress has expressed a clear intention in the APA not to authorize retroactive agency rulemaking, Congress may--subject to any applicable constitutional constraints[12] --override the general terms of the APA by explicitly authorizing retroactive regulations in an agency's organic statute. However, just as substantive legislation will not be given retroactive effect "unless such be 'the unequivocal and inflexible import of the [statutory] terms, and the manifest intention of the legislature,' "[13] an organic statute will not be read to authorize an agency to engage in retroactive rulemaking unless it is clear from the terms of the statute that Congress intended such an unusual delegation of power. In the instant case, it is clear from the terms and the legislative history of the Medicare Act that Congress did not intend to empower the Secretary to promulgate retroactive cost-limit rules. Thus, the Secretary's actions in this case are barred not only by the APA, but by the Medicare Act as well.
 
 
 24
 As outlined earlier, Congress amended section 1395x(v)(1)(A) of the Medicare Act in 1972 to authorize the Secretary to promulgate cost-limit regulations. In amending the statute, both Houses of Congress made it abundantly clear that this authority was to be exercised on a prospective basis only: "[The authority] to set limits on costs ... would be exercised on a prospective, rather than retrospective, basis so that the provider would know in advance the limits to Government recognition of incurred costs and have the opportunity to act to avoid having costs that are not reimbursable." Senate Report at 188; House Report at 83, reprinted in 1972 U.S.CODE CONG. & ADMIN.NEWS at 5070.
 
 
 25
 Since 1972, the Secretary has consistently interpreted section 1395x(v)(1)(A) to authorize cost-limit rules that are prospective in application only. See, e.g., 42 C.F.R. Sec. 413.30 (1986); Beth Israel Hosp. v. Blue Cross Assoc., [1981-1982 Transfer Binder] Medicare & Medicaid Guide (CCH) p 31,645, at 10,136-37 (Nov. 7, 1981). Indeed, on each occasion that the Secretary has promulgated a wage-index rule--including the rule challenged here on the grounds of retroactivity --the Secretary has explicitly noted that he is authorized by statute to establish prospective cost-limit rules. In light of the clear congressional intent, and the uninterrupted agency practice, we are astonished that the Secretary now purports to have the authority to promulgate such rules on a retroactive basis.
 
 
 26
 At no point in this litigation, either in the District Court or on appeal, has the Secretary disputed the fact that Congress amended the Medicare Act in 1972 to authorize prospective cost-limit rules. Nevertheless, the Secretary contends that a retroactive cost-limit rule was authorized under the present circumstances by section 1395x(v)(1)(A)(ii), the retroactive corrective adjustments provision. We cannot agree.
 
 
 27
 First, we note that the Secretary explicitly promulgated the retroactive rule under section 223 of the Social Security Amendments of 1972--the very provision that Congress added to the Medicare Act to authorize prospective cost-limit rules. It was not until the litigation in the District Court that the Secretary sought to invoke the retroactive corrective adjustments provision as authority for the rule. In light of the APA's requirement that notice of proposed rules contain "reference to the legal authority under which the rule is proposed," 5 U.S.C. Sec. 553(b)(2) (1982), and that final rules be accompanied by "a concise general statement of their basis and purpose," id. Sec. 553(c) (emphasis added), the Secretary's belated attempt to justify the rule under the retroactive corrective adjustments provision must fail.
 
 
 28
 Second, even if we were to entertain the Secretary's belated invocation of section 1395x(v)(1)(A)(ii), we would conclude that the Secretary's actions here were not authorized by the statute. Although our sister circuits have struggled to define the precise contours of the retroactive corrective adjustments provision,[14] that provision is plainly not --as the Secretary would have it--broad authority for the promulgation of retroactive cost-limit rules. Rather, the provision is narrowly drawn to allow the Secretary to make "corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the [Secretary's] methods of determining costs proves to be either inadequate or excessive." 42 U.S.C. Sec. 1395x(v)(1)(A)(ii) (emphasis added).
 
 
 29
 As the highlighted language illustrates, there is a critical distinction between the power to promulgate retroactive rules of general application and the power to make retroactive corrective adjustments in the reimbursements of particular providers whose aggregate reimbursements are shown to be either "inadequate or excessive." The former power--if it existed--would be exceedingly broad, for it would permit the Secretary to issue a modified cost-limit rule, and then automatically apply that rule across the board to all providers who had been reimbursed under the predecessor rule. The latter power, however, is far more limited, for it only allows the Secretary to adjust the reimbursements of particular providers upon proof that his "methods of determining costs" (including his cost-limit rules) resulted in inadequate or excessive reimbursements to those providers.
 
 
 30
 To emphasize the importance of this distinction, it is necessary to focus in on the workings of the statutory scheme. As outlined earlier, the Secretary's "methods of determining costs" are the means by which the Secretary estimates the "reasonable cost" incurred by all providers of Medicare services, defined by statute as the "cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." 42 U.S.C. Sec. 1395x(v)(1)(A) (1982). Like any measuring device, the Secretary's regulations will be subject to a certain degree of error, inevitably resulting in "inadequate" or "excessive" reimbursements to some providers. Where the Secretary is able to prove that inadequate or excessive reimbursements to a provider have resulted from his "methods of determining costs," he may make "suitable retroactive corrective adjustments." Id. Sec. 1395x(v)(1)(A)(ii).[15]
 
 
 31
 The administrative record is devoid of any indication that corrective adjustments in the appellees' reimbursements were warranted on the facts of this case.[16] Absent an evidentiary showing that the appellees received excessive reimbursements under the prior wage-index rule, there was no basis for even a timely invocation of the retroactive corrective adjustments provision. We therefore hold that the Secretary acted in contravention of the APA and the Medicare Act by recouping past reimbursements from the appellees, and that those reimbursements must be restored.
 
 III. CONCLUSION
 
 32
 For the reasons set forth above, the judgment of the District Court is
 
 
 33
 Affirmed.
 
 ORDER
 
 34
 We have considered appellant's petition for rehearing in the above-captioned case. Appellant characterizes our opinion as holding that the Administrative Procedure Act imposes a "per se" ban on retroactive rulemaking. As a general rule, the APA requires that legislative rules be given future effect only. Whatever exceptions might exist to this general rule were not implicated in the case before us. Our opinion therefore does not purport to address circumstances in which there may be an exception to the rule against retroactive rulemaking.
 
 
 35
 It is therefore ORDERED, by the Court, that the petition for rehearing is denied.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. Sec. 294(d) (1982)
 
 
 [1]
 Now the Department of Health and Human Services or "HHS."
 
 
 [2]
 Codified at 42 U.S.C. Sec. 1395x(v)(1)(A) (1982)
 
 
 [3]
 42 U.S.C. Sec. 1395g(a) (1982) requires the Secretary to reimburse providers periodically during the fiscal year based on estimated costs for the year. At the end of the fiscal year, the Secretary is to make any "necessary adjustments on account of previously made overpayments or underpayments." The Secretary has contracted out these statutory responsibilities to insurance companies known as "fiscal intermediaries."
 
 
 [4]
 The District Court was ambivalent about whether the Secretary had the statutory authority to promulgate a retroactive cost-limit rule. On the one hand, the court found that the APA and the Medicare Act seemed to preclude the issuance of such a retroactive rule. Slip op. at 15-16, reprinted in J.A. 108-09. On the other hand, the court observed that 42 U.S.C. Sec. 1395x(v)(1)(A)(ii) (1982), which authorizes the Secretary to provide in his regulations for the "making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive," arguably contemplated some degree of retroactive rulemaking authority. Id. at 16-17, reprinted in J.A. 109-10
 
 
 [5]
 Section 1395x(v)(1)(A)(ii) will be referred to throughout the remainder of this opinion as the "retroactive corrective adjustments provision."
 
 
 [6]
 See S.REP. NO. 404, 89th Cong., 1st Sess. 36, reprinted in 1965 U.S. CODE CONG. & ADMIN.NEWS 1943, 1976:
 Although [reimbursement] may be made on various bases the objective, whatever method of computation is used, will be to approximate as closely as practicable the actual cost (both direct and indirect) of services rendered to the beneficiaries of the program so that under any method of determining costs, the costs of services of individuals covered by the program will not be borne by individuals not covered, and the costs of services of individuals not covered will not be borne by the program.
 
 
 [7]
 As the statute was originally drafted, the Secretary did have the authority to reduce reimbursements for those "items or services which are in excess of or more expensive than" what would be considered "reasonable" under the Medicare Act. Pub.L. No. 89-97, Sec. 1861(v)(2)(B), 79 Stat. 286, 323 (1965). However, this power was rarely exercised, both because of the difficulty of proving on a case-by-case basis that a particular item or service was excessively priced, and the "financial uncertainty" to providers caused by the retroactive disallowance of incurred costs. See S. REP. NO. 1230, 92d Cong., 2d Sess. 188 (1972) ("Senate Report "); H.R.REP. NO. 231, 92d Cong., 1st Sess. 83, reprinted in 1972 U.S.CODE CONG. & ADMIN.NEWS 4989, 5069-70 ("House Report ")
 
 
 [8]
 In 1983, Congress enacted a new "prospective payment system" to be used by the Secretary in determining the appropriate level of reimbursement for inpatient hospital services. See 42 U.S.C. Sec. 1395ww(d) (Supp. III 1985). Under that new system, providers of inpatient hospital services are reimbursed on the basis of predetermined rates. This change does not affect the instant appeal, which concerns only reimbursements for costs incurred prior to 1983
 
 
 [9]
 If the hospital was located within a Standard Metropolitan Statistical Area ("SMSA"), the appropriate "local" figure would be the average hospital wage within that SMSA, and the appropriate "national" figure would be the average hospital wage among all SMSAs. If the hospital was located outside of a SMSA, the appropriate "local" and "national" figures would be calculated using non-SMSA wage data
 
 
 [10]
 Those equitable considerations include: (1) whether the issue raised in the adjudication is one of first impression; (2) whether the new policy is an abrupt departure from well-established agency practice; (3) the extent to which the parties to the adjudication relied on the old policy; and (4) the burden imposed on the parties by retroactive application of the new policy. These considerations must be balanced against the statutory interest in applying the new policy retroactively. See 466 F.2d at 390
 
 
 [11]
 The fact that the APA requires legislative rules to be given only "future effect" is underscored by 5 U.S.C. Sec. 553(d) (1982), which requires that such rules be published not less than 30 days before their effective date, except "as otherwise provided by the agency for good cause found and published with the rule." On one occasion, this circuit has suggested that, in unique circumstances, the "good cause" exception to the 30-day effective date requirement might justify legislative rules of limited retroactive effect. See Citizens to Save Spencer County v. EPA, 600 F.2d 844, 879-81 (D.C.Cir.1979). The decision in Spencer County is not only extremely limited, but the narrow exception that it purports to recognize has never been accepted by any other panel of this court. This is hardly surprising, because Sec. 553(d) appears only to contemplate a narrow exception to the 30-day requirement for rules that, for good cause shown, must be given effect either immediately upon promulgation, or in less than 30 days; neither Sec. 553(d), nor any other provision of the APA, permits rules of retrospective effect
 In any event, we need not examine the precise meaning of Sec. 553(d) here, because the reasons advanced by the Secretary in his notice for promulgating a retroactive rule plainly do not bring that rule within any conceivable "good cause" exception.
 
 
 [12]
 See generally Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 HARV.L.REV. 692 (1960); Slawson, Constitutional and Legislative Considerations in Retroactive Lawmaking, 48 CALIF.L.REV. 216 (1960)
 
 
 [13]
 Greene v. United States, 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964) (quoting Union Pac. R.R. v. Laramie Stock Yards Co., 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913))
 
 
 [14]
 See, e.g., Tallahassee Memorial Regional Medical Center v. Bowen, 815 F.2d 1435 (11th Cir.1987); Mason Gen. Hosp. v. Secretary of HHS, 809 F.2d 1220 (6th Cir.1987); Regents of the Univ. of Cal. v. Heckler, 771 F.2d 1182 (9th Cir.1985); Fairfax Nursing Center v. Califano, 590 F.2d 1297 (4th Cir.1979); Daughters of Miriam Center for the Aged v. Mathews, 590 F.2d 1250 (3d Cir.1978); Adams Nursing Home v. Mathews, 548 F.2d 1077 (1st Cir.1977); Springdale Convalescent Center v. Mathews, 545 F.2d 943 (5th Cir.1977); Kingsbrook Jewish Medical Center v. Richardson, 486 F.2d 663 (2d Cir.1973)
 
 
 [15]
 Although the Secretary is authorized by statute to make retroactive corrective adjustments, we reject out of hand the Secretary's contention that the exercise of such authority is subject to no time limitation. The Secretary infers the absence of any temporal restriction on his authority to make retroactive adjustments from the use of the phrase "any fiscal period" in Sec. 1395x(v)(1)(A)(ii) (emphasis added). We agree with the Eleventh and Sixth Circuits, however, that the use of the word "any" does not suggest that the Secretary has the awesome power to reopen a provider's account years or even decades after that account has been settled. See Tallahassee Memorial Regional Medical Center v. Bowen, 815 F.2d 1435, 1453-54 (11th Cir.1987); Mason Gen. Hosp. v. Secretary of HHS, 809 F.2d 1220, 1225-26 (6th Cir.1987). Had Congress intended to delegate such boundless authority to the Secretary, it would, we submit, have said so more directly and unambiguously
 
 
 [16]
 The fact that the appellees arguably are entitled to lower reimbursements under the Secretary's new rule does not establish that they were reimbursed in excess of their reasonable costs under the prior rule. It is equally plausible that the Secretary's new rule understates the reasonable costs incurred by the appellees in prior cost accounting periods, as the appellees have maintained throughout this litigation
 The appellees argue--and the District Court specifically found--that the Secretary's new wage-index rule understates their reasonable costs, principally because the index does not distinguish between those hospitals located within the urban "core" of a SMSA, and those hospitals located within the suburban "ring" of a SMSA (the purported distinction being that hospitals in urban cores are forced to pay higher wages to entice talented personnel). See Brief of Plaintiffs/Appellees at 39-45; Georgetown Univ. Hosp. v. Bowen, No. 85-1845, slip op. at 19-20 (D.D.C. Apr. 11, 1986), reprinted in J.A. 94, 112-13; see also Final Notice, 49 Fed.Reg. 46,495, 46,498 (1984) (conceding that a wage index that differentiates urban "cores" from suburban "rings" could "[i]n principle" provide a "more precise" wage index, but finding that such an index is infeasible "due to certain limitations of the BLS data used to construct the wage index"). Whether the appellees are indeed correct in this assertion, however, is irrelevant to the proper disposition of this appeal. The Secretary's actions here must fail because he made no attempt to demonstrate that the appellees had received excessive reimbursements under the prior rule, and therefore laid no foundation for the application of the retroactive corrective adjustments provision. Only if the Secretary had attempted such an evidentiary showing would we need to examine the appellees' substantive claims.