HENNEPIN COUNTY and Hennepin County Medical Center, Plaintiffs,

v.

Otis R. BOWEN, M.D., Defendant.

Civ. A. No. 87–0366.

United States District Court, District of Columbia.

March 17, 1988.

On Motion For Reconsideration and Clarification June 1, 1988.

H. Guy Collier, Amy E. Hancock, McDermott, Will & Emery, Washington, D.C., James M. Gaynor, Jr., McDermott, Will & Emery, Chicago, Ill., for plaintiffs.

Stuart I. Silverman, Office of Gen. Counsel, Dept. of Health and Human Serv., Washington, D.C., for defendant.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

Plaintiffs bring suit under Part A of Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq*, ("the Act"), commonly known as the Medicare statute. In Count I of the complaint, plaintiffs allege that defendant unlawfully denied an exception to plaintiffs' cost limits. In Count II of the complaint, plaintiffs maintain that defendant unlawfully denied them a retroactive cost adjustment. Presently before the Court are the parties' cross-motions for summary judgment. In consideration of the motions, the oppositions thereto, oral argument by counsel, and the entire record of the case, the Court shall deny plaintiffs' motion for summary judgment as to Count I and grant summary in favor of defendant as to Count I. The Court shall, however, grant plaintiffs' motion for summary judgment as to Count II and remand the case to the Secretary for further proceedings in accordance with the following opinion.

## FACTUAL AND STATUTORY BACKGROUND

Plaintiffs, Hennepin County and Hennepin County Medical Center (collectively, "HCMC"), challenge the decision of the Provider Reimbursement Review Board ("PRRB") denying HCMC's request for an exception to the medicare routine cost limits for its 1980 cost reporting year for atypical medical education costs.[1] Plaintiffs also contest the refusal of the Secretary of the Department of Health and Human Services (the "Secretary") to grant a retroactive corrective adjustment for HCMC's 1980 cost year.

The Medicare statute furnishes providers of health care services with reimbursements for certain costs associated with the treatment of the aged and disabled.[2] Specifically, the health care provider shall be reimbursed for the lesser of the reasonable costs of the services, as defined under section 1395x(v), or the provider's customary charge for such services. 42 U.S.C. § 1395f(b)(1).[3] "Reasonable costs" are the "cost[s] actually incurred, excluding therefrom any part of incurred cost[s] found to be unnecessary in the efficient delivery of needed health services." 42 U.S.C. § 1395x(v)(1)(A). The statute authorizes the Secretary to establish the methods for determining costs. *Id.* In defining the rather broad contours of the Secretary's rulemaking authority, the statute states that regulations promulgated by the Secretary

may provide for determination of the costs of services on a per diem, per unit, per capita, or other basis, may provide

---

1. The Secretary formulates routine cost limits for each fiscal year. 42 U.S.C. § 1395x(v)(1)(A). HCMC's fiscal year is the same as the calendar year. The cost limits promulgated by the Secretary for cost reporting periods beginning on or after July 1, 1979 applied to HCMC's cost reporting year beginning January 1, 1980 and ending December 31, 1980. Likewise, the cost limits promulgated for cost reporting periods beginning on or after July 1, 1980 apply to HCMC's cost reporting period beginning January 1, 1981 and ending December 31, 1981. For convenience, these periods will be referred to as the "1980 cost year" and the "1981 cost year," respectively.

2. The Medicare reimbursement process is quite intricate and the Court need not delve into it complexities. For a thorough review of the technical aspects of reimbursement *see Tallahassee Memorial Regional Medical Center v. Bowen*, 815 F.2d 1435, 1438–40 (11th Cir.1987), *petition for cert. filed*, Sept. 2, 1987.

3. Congress enacted a new reimbursement formula, the prospective payment system, which became effective October 1, 1983. 42 U.S.C. § 1395ww(d). This system provides for prospective reimbursement on the basis of a predetermined, specific rate for each "discharge," according to the patient's diagnosis (a "diagnosis related group" or "DRG").

for using different methods in different circumstances, may provide for the use of estimates of costs of particular items or services, may provide for the establishment of limits on the direct or indirect overall incurred costs or incurred costs of specific items or services or groups of items or services to be recognized as reasonable based on estimates of the costs necessary in the efficient delivery of needed health services ...

42 U.S.C. 1395x(v)(1)(A).[4]

Pursuant to this authority, the Secretary established cost limits for reimbursable routine costs. *See* 42 C.F.R. § 405.460; 39 Fed.Reg. 20,164 (June 6, 1974).[5] The Secretary established a procedure for determining the cost limits whereby "[p]rior to the beginning of a cost period to which revised limits will be applied, HCFA [the Health Care Financing Administration] will publish a notice in the *Federal Register,* establishing cost limits and explaining the basis on which they were calculated." 42 C.F.R. § 405.460(b)(3). The Secretary first promulgated a regulation and schedule of limits on the costs of general inpatient hospital routine services in 1974.[6]

Basically, there are two avenues for adjusting cost limits which do not adequately reimburse the health care provider's reasonable costs. First, a health care provider

may seek an exception to the cost limits in certain circumstances. 42 C.F.R. § 405.460(f). An exception will be made

only to the extent the costs are reasonable, attributable to the circumstance specified, separately identified by the provider, and verified by the intermediary.

*Id.* The circumstance implicated in this case involves an exception for health care providers operating an approved graduate medical education program.[7] The Secretary grants such a health care provider an exception if it

can demonstrate that, when compared to other providers in its group, it incurs increased costs for items or services covered by limits under this section because of its operation of an approved education program.

*Id.* § 405.460(f)(4).[8] The second means for seeking an adjustment to a provider's reimbursement is by invoking the retroactive corrective adjustment provision in section 1395x(v)(1)(A)(ii) which specifically directs the Secretary to establish regulations to

provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs

---

**4.** Originally, the Secretary lacked the authority to establish cost limits. In response to a perceived problem with inefficiencies in health care institutions, Congress provided the Secretary with the power to set cost limits. Social Security Amendments of 1972, Pub.L. No. 92–603, § 223(a); *see* S.Rep. No. 1230, 92d Cong., 2d Sess. 186–88 (1972), U.S.Code Cong. & Admin.News 1972, p. 4989.

**5.** In 1986, the Medicare regulations were redesignated in the Code of Federal Regulations. The regulation pertinent to this case, 42 C.F.R. § 405.460, now is designated 42 C.F.R. § 413.30. For convenience, however, the Court shall cite to the regulation in its original form as 42 C.F.R. § 405.460.

**6.** The Secretary updated the cost limits annually through 1981. The limits are no longer updated due to the prospective payment system which went into effect in October 1983. For cost reporting periods beginning on or after July 1, 1979, the applicable group limits were published at 44 Fed.Reg. 31, 806 (June 1, 1979).

**7.** Other than the situation of a provider operating a graduate medical education program, the regulation defines other circumstances in which the Secretary will consider granting an exception to a given provider's cost limits. *See* 42 C.F.R. 405.460(f). For example, the regulation provides an exception for the case of a hospital incurring excessive expenses attributable to extraordinary circumstances.

**8.** The costs associated with a health care provider which also has a medical education program consist of two components. First, "direct" costs consist of the costs of actually operating an approved educational program, i.e., resident stipends, teaching costs. Second, "indirect" costs consist of those other operating costs which are generally higher in hospitals with a medical education program as compared with hospitals without medical education programs. The exception set forth at 42 C.F.R. § 405.460(f)(4) is oriented towards these indirect costs. Only the indirect costs are at issue here.

proves to be either inadequate or excessive.

*Id.* In this case, HCMC initially argues that it is entitled to an exception pursuant to 42 C.F.R. § 405.460(f). Alternatively, HCMC maintains it is entitled to a retroactive corrective adjustment under 42 U.S.C. § 1395x(v)(1)(A)(ii).

HCMC is a teaching hospital with a large graduate medical education program. HCMC claims that its 1980 cost year operating expenses exceeded the Medicare established routine cost limits. Originally, HCMC claimed that it was entitled to reimbursement for $928,513.00. Presently, plaintiff seeks reimbursement for $742,-284.00 for indirect costs attributable to operating its graduate medical education program. On January 13, 1982, plaintiffs requested an exception to, and an upward adjustment of, its hospital cost limit applicable for its 1980 cost year. Administrative Record ("Record") 541–42. The Health Care Financing Administration [HCFA] denied HCMC's request on March 18, 1982, stating that HCMC had failed to document its request. Record 547. On July 23, 1982, HCMC submitted a second exception request asserting that pursuant to 42 C.F.R. § 405.406(f)(4) HCMC was entitled to reimbursement for atypical indirect costs attributable to its approved graduate medical education program. Record 543–44. The second request quantified its exception by utilizing a 1980 HCFA study ("HCFA study") which investigated the effect of medical education programs on routine costs.[9] HCFA again denied the hospital's requested exception stating that the provider had failed to demonstrate and specifical-ly identify those routine costs associated with its medical education program that were atypical when compared to the costs of similarly classified hospitals. Furthermore, the HCFA stated that the use of the cost adjustment factor applied to the limits for the 1980 cost year would result in a cost limit exception amount that was too high. Record 546, 548.

Following the HCFA's second denial of its exception request, HCMC had engaged Touche Ross to assist in demonstrating that the hospital had incurred atypical routine operating expenses attributable to its medical education program. The Touche Ross study concluded that HCMC was under-reimbursed for atypical indirect medical education costs by $742,284.[10] HCMC utilized the Touche Ross study when it appealed the HCFA's determination to the PRRB. After a hearing, the PRRB denied the exception request. Record 7–13 (decision of PRRB dated December 16, 1986); Record 126–283 (transcript of August 27, 1986 hearing before the PRRB). The PRRB concluded that

[t]he Provider did not specifically identify the claimed excess atypical indirect costs as required by 42 CFR 405.460(f). An upward adjustment to the limits is permitted under 42 CFR 405.460(f) only to the extent that the costs are reasonable, attributable to the circumstances described, specifically identified by the Provider, and verified by the Intermediary. In addition, the Provider has not met the requirements of 42 CFR 405.460(f)(4) because it has not demonstrated that it incurred increased costs for items or ser-

---

**9.** In 1980, HCFA conducted a study of hospital providers to determine whether a relationship exists between routine operating costs and the size of the provider's teaching programs. *See* Record 594–610. One of the study's conclusions was that teaching hospitals are generally more costly than other hospitals. Record 602. The study found a direct linear relationship between the ratio of residents/interns per bed and the additional cost incurred by the hospital. *Id.* In consideration of the findings, HCFA adopted a "medical education cost adjustment factor" ("teaching adjustment factor") effective for cost reporting years beginning on or after July 1, 1980. 45 Fed.Reg. 41868 (June 20, 1980). The teaching adjustment factor provides for an in-crease in a teaching hospital's limit by 4.7% for each increase of .10 in the hospital's ratio of full-time equivalent interns and residents to its bed size. 45 Fed.Reg. at 41874.

**10.** The Touche Ross study used the teaching adjustment factor to quantify HCMC's reasonable atypical medical education costs. Because the cost limits governing HCMC for their 1980 cost year included some reimbursement for indirect costs, the Touche Ross study analyzed the data used to construct the 1980 cost year limits to quantify the amount of indirect medical education costs that already were reflected in those limits. Record 207–11; 511–16.

vices over those incurred by comparable providers from the operation of an approved education program specified in 42 CFR 405.421.

The routine cost limit methodology adopted for cost reporting periods beginning on or after July 1, 1980 adjusted the limits for indirect approved education costs but did not specifically identify the costs. Thus, that methodology does not meet the explicit requirements of 42 CFR 405.460(f)(4).

Record 10–11. HCMC appealed the PRRB's decision to this Court on February 13, 1987. Count I of the complaint alleges that the Secretary arbitrarily and capriciously denied HCMC's request for an exception to the limits governing HCMC's 1980 cost year. Count II of the complaint alleges that the statute requires that the Secretary grant a retroactive corrective adjustment to its reimbursement for the 1980 cost year because the Secretary's method for determining the cost limits for that year produced an inadequate reimbursement.

### DISCUSSION

I. THE SECRETARY DID NOT ARBITRARILY AND CAPRICIOUSLY DENY HCMC'S REQUEST FOR AN EXCEPTION TO THE LIMITS GOVERNING HCMC'S 1980 COST YEAR.

Under 42 C.F.R. § 405.460(f), a provider operating a graduate medical education program qualifies for an exception to the cost limits for a given year only upon demonstrating that the costs in excess of the cost limits are (1) reasonable; (2) attributable to the operation of an approved medical education program; (3) separately identifiable; (4) verified by the intermediary; and (5) higher than the costs incurred by other providers in its group. 42 C.F.R. § 405.460(f)(4). The basic issue of contention between the parties is whether HCMC separately identified the excessive costs attributable to the operation of the medical education program.

The Secretary found that HCMC failed to identify specifically those excessive costs attributable to the medical education program. Furthermore, the Secretary found that plaintiff had failed to establish that it incurred increased costs for items or services over those incurred by comparable providers with medical education programs. HCMC utilized the HCFA study which established that hospitals with graduate medical education programs incur higher costs than those providers without a medical education program. *See, supra* note 9 (discussing HCFA study and conclusions). This study formed the basis for the promulgation of the medical education cost adjustment factor ("teaching adjustment factor") effective for cost reporting years beginning July 1, 1980. *See* 45 Fed.Reg. 41868 (June 20, 1980). Plaintiff claims that it utilized the study and quantified its findings to HCMC specific information.[11] Plaintiff maintains that to conduct a study to specifically identify those costs associated with the indirect costs of running a graduate medical education program would have been cost prohibitive.[12]

The Medicare statute directs the Court to review the Secretary's determinations consistent with the procedures of the Administrative Procedure Act. 42 U.S.C. § 1395oo (b). In this case, the arbitrary and capricious standard applies. 5 U.S.C. § 706. This Circuit has ruled on a number of occasions that Congress granted the Secretary broad discretion to develop regula-

---

11. At the PRRB hearing, Kenneth Stocke, a partner at Touche Ross, testified as to the mechanics of quantifying the data. Touche Ross used the specific information that HCMC had 242 residents in a 425 bed hospital. The firm then applied the *average* cost data found by the HCFA to be appropriate on a *national* basis (i.e., an increase in costs of 4.7% for each increase of .10 in the hospital's ratio of residents to beds). Record at 216, 511–12 (Touch Ross calculations).

12. Daniel McLaughlin, the administrator of HCMC, testified that the Minnesota Association of Public Teaching Hospitals, consisting of four teaching hospitals in HCMC's area, considered a study to identify specifically the teaching costs. The cost would have been $500,000 for the whole group. Record 146–47. The administrative record, however, does not indicate the cost for such a study if undertaken solely by HCMC.

tions under the Medicare statute. *See, e.g., Humana, Inc. v. Heckler,* 758 F.2d 696, 699 (D.C.Cir.1985), *cert. denied,* 474 U.S. 1055, 106 S.Ct. 791, 88 L.Ed.2d 769 (1986); *Villa View Community Hospital v. Heckler,* 728 F.2d 539, 543 (D.C.Cir.1984); *Richey Manor, Inc. v. Schweiker,* 684 F.2d 130, 134 (D.C.Cir.1982). Accordingly, the Secretary's interpretations of the statute and, especially, the Secretary's interpretations of the agency's own regulations are entitled to great deference. *Humana v. Heckler,* 758 F.2d at 699; *see City of Austin, Texas, Bradkenridge Hospital v. Heckler,* 753 F.2d 1307, 1313 (5th Cir.1985) (deference to Secretary in context of Medicare legislation is especially strong in case where Secretary is interpreting his own regulations because Secretary has primary responsibility for interpreting the statute); *see also Fairfax Nursing Center, Inc. v. Califano,* 590 F.2d 1297, 1301 (4th Cir. 1979) (provider bears burden of establishing that its costs exceeded the cost limits). HCMC does not contest the validity of the regulation. Rather, the sole issue confronting this Court is whether the Secretary correctly interpreted the agency's own regulation the specificity showing required of the provider. The Court of Appeals for the Eighth Circuit confronted the exact issue when a provider in plaintiff's peer group attempted to use the same HCFA study. *St. Paul–Ramsey Medical Center v. Bowen,* 816 F.2d 417 (8th Cir.1987). The Eighth Circuit held that "it was not improper to allocate to [the provider] the burden of producing specific data to prove the atypicality of its costs." *Id.* at 419. In light of the Eighth Circuit's interpretation of a provider's exact same attempt to use the HCFA study to prove specificity and in keeping with this Circuit's indications of the high degree of deference accorded the Secretary in interpreting the Medicare statute, the Court shall find that the Secretary did not arbitrarily and capriciously require the provider to furnish specific data regarding the manner in which HCMC's actual indirect costs associated with its graduate medical education program exceeded the cost limits.

## II. THE PROMULGATION OF THE TEACHING ADJUSTMENT FACTOR DOES NOT MANDATE AN ACROSS THE BOARD RETROACTIVE CORRECTIVE ADJUSTMENT.

Plaintiff next argues that the Secretary is required as a matter of law to grant HCMC a retroactive corrective adjustment. Plaintiff argues that the Secretary's inclusion of a "medical education cost adjustment factor" for the cost years beginning in July, 1980 essentially amounts to a recognition that the reimbursement method covering HCMC's 1980 cost year was inadequate. Plaintiff maintains that because the method governing HCMC's 1980 cost year failed to consider the increased costs experienced by providers which operate graduate medical education programs, the Secretary must grant a retroactive cost adjustment as directed by the Medicare statute. 42 U.S.C. § 1395x(v)(1)(A)(ii) (the Secretary shall provide "suitable retroactive corrective adjustments, where ... the reimbursement produced by the methods of determining costs proves to be either inadequate or excessive").

Only one Court has considered this express issue of whether the teaching adjustment factor governing cost limits after July 1981 requires a retroactive cost adjustment. *See St. Paul–Ramsey Medical Center v. Bowen,* 816 F.2d 417 (8th Cir. 1987). The Eighth Circuit held that section 1395x(v)(1)(A)(ii) "imposes a statutory duty upon the Secretary *whenever* the chosen method of cost calculation fails to adequately reimburse all reasonable costs." *Id.* at 420. The Eighth Circuit remanded the case to the district court directing the district court to "order the Secretary to retroactively apply the 1980 Indirect Teaching Cost Adjustment to the hospital's application for reimbursement." *Id.*

The Eight Circuit's decision and order appear to conflict with this Circuit's decision in *Georgetown University Hospital v. Bowen,* 821 F.2d 750 (D.C.Cir.1987), *cert. granted,* —— U.S. ——, 108 S.Ct. 1073, 99 L.Ed.2d 232 (1988). While *Georgetown University* did not involve the issue of the retroactivity of the teaching adjustment

factor, the court discussed the meaning of section 1395x(v)(1)(A)(ii).[13] The D.C. Circuit stated that the section is not "broad authority for the promulgation of retroactive cost-limit rules." *Id.* at 759. Rather, the section is narrowly drawn to permit

> the Secretary to adjust the reimbursements of particular providers upon proof that his "methods of determining costs" (including his cost-limit rules) resulted in inadequate or excessive reimbursements to those providers.... Like any measuring device, the Secretary's regulations will be subject to a certain degree of error, inevitably resulting in "inadequate" or "excessive" reimbursements to *some providers.*

*Id.* at 759–60. According to this Circuit, Congress enacted section 1395x(v)(1)(A)(ii) to cover those situations in which the Secretary's regulations prove inadequate to recompense fully an individual provider for its reasonable costs. Given the *Georgetown University* court's holding that section 1395x(v)(1)(A)(ii) is narrowly drawn to provide the statutory authority for the Secretary to grant retroactive corrective adjustments to "particular providers" whose reimbursements prove inadequate because of the "methods of determining costs," this Court declines to follow the Eighth Circuit's decision that the teaching adjustment factor must be retroactively applied.

### III. THE SECRETARY, ON REMAND, SHALL GRANT A RETROACTIVE CORRECTIVE ADJUSTMENT IF HCMC DEMONSTRATES THAT IT, INDIVIDUALLY, SUFFERED REASONABLE COSTS ATTRIBUTABLE TO THE OPERATION OF ITS GRADUATE MEDICAL EDUCATION PROGRAM.

■ This Court, however, finds that under the case law section 1395x(v)(1)(A)(ii) *requires* a retroactive corrective adjustment if a *particular* provider demon-

strates that *it* was reimbursed inadequately. *See Georgetown University*, 821 F.2d at 760 (retroactive cost adjustments are appropriate upon an evidentiary demonstration that an individual provider was excessively or inadequately reimbursed); *Tallahassee Memorial Regional Medical Center v. Bowen*, 815 F.2d at 1454 (section 1395x(v)(1)(A) grants the Secretary limited "power to make corrective adjustments in the reimbursement of individual hospitals"); *Regents of the University of California on Behalf of University of California, Davis Medical Center v. Heckler*, 771 F.2d 1182, 1189 (9th Cir.1985) (section 1395x(v)(1)(A)(ii) imposes "a duty upon the Secretary to ensure that the necessary corrective adjustments are made whenever the methods of cost calculation fail to reimburse a provider for its reasonable costs"); *Cambridge Hospital Association, Inc. v. Bowen*, 655 F.Supp. 439, 448 (D.Minn.1987) ("it is unjust to shift the cost of Medicare to the provider, particularly where the provider's costs are eminently reasonable. The Secretary has a statutory duty to determine whether the cost limits have produced an inequitable result in a given case"). Given the case law, the Court determines that the Secretary must grant a retroactive cost adjustment if an individual provider demonstrates that it experienced reasonable expenses in excess of the cost limits for a given year. The Court determines that this does not amount to a broad retroactive rule in contravention of *Georgetown University* because the Secretary must review each provider's case individually.

In this case, the parties agree that health care providers with graduate medical education programs experience higher operating costs. In light of this fact, the Secretary implemented the teaching adjustment factor. While the Secretary is precluded from retroactively applying the regulation

---

**13.** *Georgetown University* involved the Secretary's promulgation of a wage-index rule as part of his cost limit regulations. The Secretary issued the rule in 1984 and gave it retroactive effect to all cost accounting periods beginning on or after July 1, 1981. Pursuant to the regulation, the amount the Medicare program would

have recouped was in excess of two million dollars. The issue before the D.C. Circuit was whether the Secretary could enact a broad retroactive regulation pursuant to his authority to enact cost limits, 42 U.S.C. § 1395x(v)(1)(A), or pursuant to his authority to provide for retroactive cost adjustments, *id.* at § 1395x(v)(1)(A)(ii).

across the board, the Secretary's regulation amounts to a recognition that the methods of setting the cost limits for providers with graduate education programs were inadequate and providers may have been compensated inadequately. The Secretary, therefore, must consider whether HCMC, itself, suffered inadequate compensation. In light of what the Court considers to be an acknowledgement that a given method was faulty and because the Secretary failed to adequately consider whether the HCMC had demonstrated that it individually suffered inadequate reimbursement and might be entitled to a retroactive corrective adjustment, the Court shall grant summary judgment for plaintiff as to Count II and remand this case to the Secretary for further proceedings in light of this opinion.

## CONCLUSION

For the foregoing reasons, the Court shall grant summary judgment in favor of plaintiff as to Count II of HCMC's complaint and remand the case to the Secretary for further proceedings in accordance with this opinion. The Court shall grant summary judgment in favor of defendant as to Count I.

## ON MOTION FOR RECONSIDERATION AND CLARIFICATION

In a memorandum opinion and accompanying order filed March 17, 1988, this Court granted summary judgment in favor of defendant as to Count I of plaintiffs' complaint. As to Count II of the complaint, the Court granted summary judgment in favor of plaintiffs, Hennepin County and Hennepin County Medical Center (collectively, "HCMC"), and remanded the case to the Secretary of the Department of Health and Human Services (the "Secretary") for further proceedings in accordance with the memorandum opinion. Presently before the Court are defendant's motion for reconsideration and clarification and HCMC's motion for clarification. Defendant argues initially that the Court's

ruling on Count II is erroneous as a matter of law. Alternatively, the government maintains that the sole avenue under which HCMC may proceed is 42 C.F.R. § 405.460(f) and requests the Court amend its order to reflect this clearly.[1] HCMC requests that the Court modify its order to reflect that on remand the Secretary bears the burden of establishing that HCMC received adequate reimbursement under the Secretary's cost limits.

The Court has carefully considered the parties' motions. With 42 U.S.C. § 1395x(v)(1)(A)(ii), Congress authorized the Secretary to promulgate regulations which "shall ... provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive." In its March 17, 1988 opinion, the Court found that the teaching adjustment factor amounted to a recognition that the method of setting the cost limits for providers with graduate education programs was inadequate. As such, the Court remanded the case to the Secretary to consider whether HCMC demonstrated that it individually was reimbursed inadequately.

The statute directs the Secretary to promulgate regulations which address the instances when a reimbursement method proves to be inadequate. The Secretary did this. The Court finds that the regulatory framework is the exclusive means for HCMC to proceed at the agency level. Under this scheme, where the particular provider demonstrates that it individually was reimbursed inadequately, then the Secretary must provide a corrective adjustment. *See* Memorandum Opinion, March 17, 1877 at 14–15. The Court found that the teaching adjustment factor amounted to a recognition that the methods for reimbursement were inadequate. However, given the case law and regulatory scheme, the individual provider must demonstrate that it individu-

---

1. In 1986, the Medicare regulations were redesignated in the Code of Federal Regulations. The regulation pertinent to this case, 42 C.F.R. § 405.460, now is designated as 42 C.F.R. § 413.30. For convenience and in keeping with the memorandum opinion, however, the Court shall cite to the regulation in its original form as 42 C.F.R. § 405.460.

ally was reimbursed inadequately. Under the regulatory scheme, HCMC must demonstrate that, when compared with other providers in its group, HCMC incurred reasonable increased costs attributable to an approved medical education program, and that these costs are separately identified and verified by the intermediary.

In consideration of the motions and in keeping with the foregoing discussion, it is this 31st day of May, 1988,

ORDERED that the Court's opinion and accompanying order of March 17, 1988 is amended solely to reflect that the exclusive means for HCMC to proceed is pursuant to 42 C.F.R. § 405.460(f); and it is

FURTHER ORDERED that HCMC's motion for clarification is denied and that HCMC bears the burden of proof under the regulatory scheme.