**HENNEPIN COUNTY, a Body Politic Organized Under the Laws of the State of Minnesota, et al., Appellants**

v.

**Dr. Louis W. SULLIVAN, in his Official Capacity as Secretary of the United States Department of Health and Human Services.**

Nos. 88–5255 and 88–5256.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 5, 1989.

Decided June 30, 1989.

James M. Gaynor, Jr., Chicago, Ill., with whom H. Guy Collier and Amy E. Hancock, Washington, D.C., were on the brief, for appellants in No. 88–5255 and for appellees in No. 88–5256.

Gerard Keating, Atty., Dept. of Health and Human Services, with whom Stuart I. Silverman, Atty., Dept. of Health and Human Services, Henry R. Goldberg, Deputy Associate Gen. Counsel for Litigation, Dept. of Health and Human Services, Craig R. Lawrence, Asst. U.S. Atty., Jay B. Stephens, U.S. Atty., Malcolm M.R. Sterrett, Gen. Counsel, and Darrel J. Grinstead, Acting Associate Gen. Counsel, Dept. of Health and Human Services, Health Care Financing Div., Washington, D.C., were on the brief, for appellee/cross-appellant in Nos. 88–5255 and 88–5256.

Anthony J. Steinmayer and Mark W. Pennak, Attys., Dept. of Justice, Washington, D.C., also entered appearances for appellee in No. 88–5255 and for appellant in No. 88–5256.

Before ROBINSON, EDWARDS and SILBERMAN, Circuit Judges.

HARRY T. EDWARDS, Circuit Judge:

This case presents cross-appeals from a District Court decision denying Hennepin County and Hennepin County Medical Center (collectively 'HCMC') immediate reimbursement under the Medicare statute, Title XVIII of the Social Security Act, 42 U.S.C. section 1395 et seq. (1982 & Supp. V 1987), but remanding the case to the Secretary of Health and Human Services[1] ('HHS') for further proceedings. In Count I of the complaint below, HCMC alleged that HHS unlawfully denied its request for an exemption (or 'exception') from the limitations on reimbursable costs for medical education expenses in the 1980 cost reporting year. In Count II, HCMC alleged, in the alternative, that HHS unlawfully denied it a 'retroactive corrective adjustment[ ]' for these same medical education expenses, pursuant to 42 U.S.C. section 1395x(v)(1)(A)(ii) (Supp. V 1987). The District Court granted summary judgment in favor of HHS on Count I, but granted summary judgment in favor of HCMC on Count II, remanding the case to HHS to determine whether HCMC was entitled to a retroactive corrective adjustment. See *Hennepin County v. Bowen*, 689 F.Supp. 1 (D.D.C.1988).

We affirm the judgment of the District Court as to Count I; we agree that HHS properly denied HCMC immediate reimbursement under applicable agency regulations. However, we reverse the summary judgment in favor of HCMC on Count II; since HCMC was not entitled to immediate reimbursement under Count I, it cannot be entitled to retroactive reimbursement for these same claims under the same regulation by which it was denied reimbursement in the first instance. Accordingly, we reverse the trial court's remand of the case to HHS for further proceedings.

There cannot be a retroactive corrective adjustment here because it is clear that, under existing, lawful agency regulations, HCMC was not entitled to any exemption from the limitation on reimbursable costs for medical education expenses. In other words, HCMC has received all that it was due under the law. We reject HCMC's suggestion that 42 U.S.C. section 1395x(v)(1)(A)(ii) should be read to compel the Government, after the fact, to consider whether, as a matter of 'fairness,' claim-

---

1. Louis Sullivan, the current Secretary of HHS, has been substituted as a defendant for Otis R. Bowen, who was Secretary at the time of the events giving rise to this litigation.

ants should be awarded something more than lawful regulations required. This would amount to a form of retroactive rule-making that was specifically rejected by the Supreme Court in *Bowen v. Georgetown Univ. Hosp.*, — U.S. —, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). Accordingly, we affirm in part and reverse in part the judgment of the District Court.

## I. BACKGROUND

### A. STATUTORY AND REGULATORY FRAMEWORK

The Medicare statute, Title XVIII of the Social Security Act, 42 U.S.C. section 1395 et seq. (1982 & Supp. V 1987), through a complex reimbursement process, see *Tallahassee Memorial Regional Medical Center v. Bowen*, 815 F.2d 1435, 1438–40 (11th Cir.1987), cert. denied, — U.S. —, 108 S.Ct. 1573, 99 L.Ed.2d 888 (1988), furnishes providers of health care services with reimbursements for certain costs associated with the treatment of the aged and disabled. At the time of the events leading to this litigation, the Medicare statute provided that a health care provider was entitled to reimbursement for the lesser of the reasonable costs of the services as defined under 42 U.S.C. section 1395x(v), or the provider's customary charge for such services.[2] 42 U.S.C. section 1395f(b)(1) (1982). The statute defined 'reasonable costs' as those 'cost[s] actually incurred, excluding therefrom any part of incurred cost[s] found to be unnecessary in the efficient delivery of needed health services,' 42 U.S.C. section 1395x(v)(1)(A); it authorized the Secretary of HHS to establish the methods for determining costs, id.; and it

granted the Secretary broad rulemaking authority, see id. Pursuant to this broad authority, the Secretary has established cost limits for reimbursable routine costs, 42 C.F.R. section 405.460; 39 Fed.Reg. 20,-164 (June 6, 1974),[3] and a procedure for determining these cost limits, see id. section 405.460(b)(3).

The Secretary also enacted two basic mechanisms for adjustment of cost limits in cases where the general rules do not adequately reimburse the health care provider's reasonable costs. First, a provider may seek an exemption from the cost limits under one of the enumerated situations in 42 C.F.R. section 405.460(f)—for example, when excess expenses are attributable to 'extraordinary circumstances,' see id. section 405.460(f)(2). An exception is allowed only if the costs are reasonable, attributable to the circumstances specified, separately identified by the provider, and verified by the intermediary.[4]

Id. section 405.460(f). In this case, HCMC sought reimbursement under section 405.460(f)(4), which allows an exception for health care providers operating an approved graduate medical education program if the provider can demonstrate that, if compared to other providers in its group, it incurs increased costs for items or services covered by limits under this section because of its operation of an approved education program. Id. section 405.460(f)(4).

The additional costs generated by a graduate medical education program include both 'direct' and 'indirect' costs, but 42 C.F.R. section 405.460(f)(4) refers only to 'indirect costs.' 'Direct costs' consist of the actual costs of operating an approved educational program, such as resident sti-

---

2. Effective October 1, 1983, a new reimbursement formula went into effect under 42 U.S.C. section 1395ww(d) (Supp. V 1987), known as the prospective payment system. This new system provides for prospective reimbursement to providers on the basis of a predetermined rate for each 'discharge' according to the patient's diagnosis.

3. In 1986, the Medicare regulations were redesignated in the Code of Federal Regulations, and 42 C.F.R. section 405.460 is now numbered 42 C.F.R. section 413.30. Because the events in

this case took place well before this redesignation, we cite to this regulation in its original form for convenience and for consistency with the lower court decision. See *Hennepin County*, 689 F.Supp. at 3 n. 5.

4. The fiscal intermediary, usually a private insurance company, is the statutorily-provided agent of the Secretary with whom each health care provider files its annual cost report for review of the reimbursement claims. 42 U.S.C. section 1395h (1982 & Supp. V 1987).

pends and teaching costs. 'Indirect costs' consist of those operating expenses which are generally higher in teaching hospitals than in non-teaching hospitals. HCMC sought additional reimbursement for indirect costs associated with increased administrative expenses attributable to educating and supervising the residents in the hospital; these expenses included items such as the additional ward clerk and nurse time spent instructing residents on hospital's procedures. Brief for HCMC at 11–12.

Wholly apart from the regulations covering exemptions from the limitations on reimbursable costs is the provision in 42 U.S.C. section 1395x(v)(1)(A)(ii), which directs the Secretary to establish regulations to provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive.

42 U.S.C. section 1395x(v)(1)(A)(ii). As is clear from the terms of the statute, Congress left the task of delineating the scope of 'suitable retroactive corrective adjustments' entirely to the Secretary of HHS. Pursuant to this statutory mandate, the Supreme Court noted in *Georgetown Hosp.* that the Secretary promulgated 'regulations ... immediately after enactment of the Medicare Act establish[ing] a mechanism for making retroactive corrective adjustments' through 42 C.F.R. sections 405.-451(b)(1), 405.454(a), (f) (1983). See *Georgetown Hosp.*, 109 S.Ct. at 473. As the Court elaborated, '[t]hese regulations provide for adjusting the amount of interim payments received by a provider, to bring the aggregate reimbursement into line with the provider's actual reasonable costs.' Id. And, to make the point more forceful, the Court added, '[42 C.F.R. section 405.-451(b)(1), 405.454(a), (f) ] are the only regulations that expressly contemplate the making of retroactive corrective adjustments.' Id.

Based on these dual avenues for relief, HCMC makes two alternative applications for reimbursement. In Count I, HCMC argues that it is entitled to an EXCEPTION pursuant to 42 C.F.R. section 405.-460(f); and, alternatively, in Count II, HCMC maintains that it is entitled to a RETROACTIVE CORRECTIVE ADJUSTMENT under 42 U.S.C. section 1395x(v)(1)(A)(ii).

## B.  THE FACTS OF THIS CASE

HCMC is a teaching hospital with a large graduate medical education program. With 242 residents and 425 beds, it has what it claims is an unusually large program, teaching at a ratio of one resident for every 1.8 beds; in contrast, the average urban hospital with a comparable number of beds has one resident for every 8.1 beds. Because of this large medical education program, HCMC claims its 1980 cost year operating expenses exceeded the Medicare established routine cost limits.

On January 13, 1982, HCMC requested an exception to, and an upward adjustment of, its reimbursable cost limit for its 1980 cost year.[5] The Health Care Financing Administration ('HCFA'), the branch of HHS responsible for handling such requests, denied HCMC's request on March 18, 1982, on the ground that HCMC had failed to document its request. On July 23, 1982, HCMC submitted a second exception request, asserting that pursuant to 42 C.F.R. section 405.460(f)(4), it was entitled to reimbursement for atypical indirect costs attributable to its approved graduate medical education program.

HCMC supported its second request for exception with information from a 1980 HCFA Study that investigated the effect of medical education programs on routine costs. One of the conclusions in the Study was that teaching hospitals are generally more costly than other hospitals. The Study found a direct linear relationship between the ratio of residents or interns per bed and the additional costs incurred by the

---

5. Originally, HCMC claimed that it was entitled to reimbursement for $928,513; however, HCMC now seeks reimbursement for only $742,284 in indirect costs attributable to operating its graduate medical education program.

hospital. In light of these findings, HCFA adopted a 'medical education cost adjustment factor,' called a 'teaching adjustment factor,' effective for cost reporting years beginning ON OR AFTER JULY 1, 1980— I.E., beginning with HCMC's 1981 cost year. This teaching adjustment factor provides for an increase in a teaching hospital's cost limits by 4.7% for each increase of .10 in the hospital's ratio of full-time or equivalent interns and residents to its bed size.

HCMC states that it relied on the HCFA Study rather than individualized information gathered independently because it 'is nearly impossible . . . to identify the precise amount of increased . . . time [spent by various departments] attributable to HCMC's operation of large graduate medical education programs.' Brief for HCMC at 11. In order to quantify its indirect costs in a way that would satisfy the requirements of 42 C.F.R. section 405.-460(f)(4), HCMC claims that it would have to spend over $500,000 to conduct a study of internal data, and even then it might not be able to generate data that would be usable regarding the separation of costs between medical education and patient care functions. See Reply Brief for HCMC at 4–5.

HCFA denied HCMC's requested exception a second time, stating that HCMC had failed to demonstrate and specifically identify those routine costs associated with its medical education program that were atypical when compared to the costs of similarly classified hospitals and were attributable to HCMC's graduate medical education program. Furthermore, HCFA stated that the use of the cost adjustment factor applied to the limits for the 1980 cost year would result in a cost limit exception that was too high.

Following HCFA's second denial of its request, HCMC engaged the consultants Touche Ross & Co. to assist in demonstrating that the hospital had incurred atypical routine operating expenses attributable to its medical education program. Touche Ross produced its own Study, which applied the teaching adjustment factor of the

HCFA Study to HCMC's 1980 expenses, and then adjusted the amount downwards to reflect the amount that had already been reflected in the HHS payments to HCMC under the 1980 limits. Using this formula, the Touche Ross Study concluded that HCMC was underreimbursed for atypical indirect medical education costs by $742,-284 for the 1980 cost year.

Using the Touche Ross Study as evidence, HCMC appealed HCFA's determination to the Provider Reimbursement Review Board ('PRRB'), pursuant to 42 U.S.C. section 1395oo (a) (1982 & Supp. V 1987). After a hearing, the PRRB also denied the request for an exception. In a decision dated December 16, 1986, the PRRB agreed that HCMC 'did not specifically identify the claimed excess atypical indirect costs as required by 42 C.F.R. 405.460(f).' See *Hennepin County Medical Center v. Blue Cross & Blue Shield Ass'n,* Provider Reimbursement Review Board Hearing Decision No. 85–904, slip op. at 4 (Dec. 16, 1986), reprinted at Appendix ('A.') 15, 18. Moreover, the PRRB found that HCMC did not meet the specific 'requirements of 42 C.F.R. section 405.460(f)(4) because it ha[d] not demonstrated that it incurred increased costs for items or services over those incurred by comparable providers from the operation of an approved education program specified in 42 C.F.R. 405.421.' A. 18. The PRRB rejected the argument that the HCFA Study was adequate to demonstrate the need for reimbursement under 42 C.F.R. section 405.460(f)(4) because the 'routine cost limit methodology [this Study] adopted for cost reporting periods beginning on or after July 1, 1980 adjusted the limits for indirect approved education costs but did not specifically identify the costs.' A. 18–19.

Pursuant to 42 U.S.C. section 1395oo (f)(1) (Supp. V 1987), HCMC appealed the PRRB decision to the District Court on February 13, 1987. HCMC argued that it was entitled to an immediate medical education reimbursement under 42 C.F.R. section 405.460(f) in Count I, or to a retroactive adjustment under 42 U.S.C. section 1395x(v)(1)(A)(ii) in Count II. The District Court rejected HCMC's argument as to

Count I, but reversed and remanded to the PRRB for further consideration as to Count II.

The District Court relied on the reasoning of the Eighth Circuit in a case with nearly identical facts, *St. Paul–Ramsey Medical Center v. Bowen*, 816 F.2d 417 (8th Cir.1987), in disposing of Count I. The District Court found that it was entirely reasonable for the Secretary to 'require the provider to furnish specific data regarding the manner in which HCMC's actual indirect costs associated with its graduate medical education program exceeded the cost limits,' *Hennepin County*, 689 F.Supp. at 6, in light of the Eighth Circuit's decision in St. Paul–Ramsey and 'in keeping with [the D.C.] Circuit's indications of the high degree of deference accorded the Secretary in interpreting the Medicare statute.' *Id.* Thus, the Court granted summary judgment for HHS on Count I.

However, on Count II, the District Court departed from the reasoning of the court in *St. Paul–Ramsey*. To the extent that *St. Paul–Ramsey* held that HHS had a duty to retroactively correct EVERY pre–1981 disbursement made under 42 C.F.R. section 405.460(f) without an individual showing of need, the District Court recognized that *St. Paul–Ramsey* violated the rule against retroactive rulemaking as set forth by this circuit in *Georgetown Univ. Hosp. v. Bowen*, 821 F.2d 750 (D.C.Cir.1987). See 689 F.Supp. at 6–7.[6] Nevertheless, the District Court rejected the HHS argument that mandating a retroactive reassessment of HCMC's claim would amount to retroactive rulemaking. Instead, the court held that section 1395x(v)(1)(A)(ii) REQUIRES a retroactive corrective adjustment if a PARTICULAR provider demonstrates that IT was reimbursed inadequately.... [T]he Secretary must grant a retroactive cost adjustment if an individual provider demonstrates that it experienced reasonable expenses in excess of the cost limits for a given year. The Court determines that this does not amount to a broad retroactive rule

in contravention of Georgetown University because the Secretary must review each provider's case individually.

689 F.Supp. at 7 (emphasis in original). Applying this rationale to the immediate facts, the trial court reasoned that the parties agree that health care providers with graduate medical education programs experience higher operating costs. In light of this fact, the Secretary implemented the teaching adjustment factor. While the Secretary is precluded from retroactively applying the regulation across the board, the Secretary's regulation amounts to a recognition that the methods of setting the cost limits for providers with graduate education programs were inadequate and providers may have been compensated inadequately. The Secretary, therefore, must consider whether HCMC, itself, suffered inadequate compensation. *Id.* at 7–8. The District Court thus granted summary judgment for HCMC on Count II and remanded to the PRRB for further consideration.

A little over two months later, the District Court issued a clarification order, see *id.* at 8–9, to make clear that the only avenue through which HCMC could be granted substantive relief was under HHS regulations promulgated in furtherance of 42 U.S.C. section 1395x(v)(1)(A)(ii). The clarification order stated that, even in consideration of its retroactive application, 'the exclusive means for HCMC to proceed is pursuant to 42 C.F.R. section 405.460(f); and ... HCMC bears the burden of proof under the regulatory scheme.' *Id.* at 9.

HCMC appeals the District Court decision on Count I, alleging that the HCFA and Touche Ross Studies provided sufficient evidence for a finding of a medical education costs exception. Specifically, HCMC alleges that it was an abuse of discretion for HHS to find the Studies to be inadequate when the individualized data HHS required was impossible to produce. HHS appeals the decision on Count II on two grounds: first, HHS claims that it is

---

**6.** This court's decision in *Georgetown Univ. Hosp.* was affirmed by the Supreme Court after the trial court's opinion had issued in this case.

See *Bowen v. Georgetown Univ. Hosp.,* —— U.S. ——, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988).

illogical to mandate retroactive consideration of a decision simultaneously held to be reasonable; and, second, HHS argues that the trial court's decision would require the agency to engage in prohibited retroactive rulemaking.

## II. ANALYSIS

■ Our review in this case, like that of the District Court, is limited to determining whether, on the record as a whole, the PRRB's decision is supported by substantial evidence.[7] Our review proceeds as if this case were an immediate appeal from a decision reached after an administrative hearing on the record. The District Court's decision is not entitled to any particular deference. *Biloxi Regional Medical Center v. Bowen*, 835 F.2d 345, 348–49 (D.C.Cir.1987); *Walter O. Boswell Memorial Hosp. v. Heckler*, 749 F.2d 788, 790 n. 2 (D.C.Cir.1984); see also *Regents of the Univ. of California v. Heckler*, 771 F.2d 1182, 1187 (9th Cir.1985) ('[W]e review the Secretary's action under the same standard as did the district court.').

## A. COUNT I. THE MEDICAL EDU-CATION COSTS EXCEPTION

■ HCMC admits that the "dispute in this case … centers not on whether HCMC had increased costs as a result of its large medical education programs, but rather on the adequacy of HCMC's demonstration that its routine costs in excess of the limits were attributable to [these programs]—in other words, whether HCMC has 'separately' identified those costs." Brief for HCMC at 19. On the record of this case, we agree with the District Court's judgment upholding the PRRB conclusion that HCMC did not precisely identify its costs. Indeed, HCMC itself spends a considerable portion of its brief arguing that it CANNOT identify these costs with any preci-

sion, because of the difficulty of parsing time allocations of indirect costs. Thus, we affirm the District Court's finding that the PRRB properly denied HCMC a medical education costs exception under 42 C.F.R. section 405.460(f)(4).

HCMC's argument rests primarily on the fact that, because the HCFA Study itself recognized that precise data was unproducible, HCMC's reliance on the HCFA Study was therefore 'reasonable.' However, this argument begs what HCMC admits is the fundamental question in this case: whether HCMC submitted sufficient evidence to demonstrate 'separately identified' excess costs incurred because of its medical education program 'if compared to other providers in its group.' 42 C.F.R. section 405.-460(f).

It is irrelevant that the HCFA Study noted how difficult it would be to quantify a medical education exception; it is also irrelevant that HHS prospectively altered its regulations in light of this difficulty. If HCMC means to suggest that, because of this difficulty, the refusal to apply the Study's findings to pre–1981 claims was prima facie arbitrary and capricious, we reject this contention. To embrace such a rule would be to discourage agencies from reconsidering their regulations in light of new data for fear of being forced to apply new regulations retroactively. This we will not do, for there is nothing inherently arbitrary or capricious about an agency's decision to apply new data prospectively only.

Furthermore, and more importantly, HCMC concedes that it has challenged neither the legality of the standard under 42 C.F.R. section 405.460(f), nor its applicability to this case. Indeed, at oral argument, counsel for HCMC acknowledged that this regulation was in place and lawful, and that it had been consistently applied by the agency to claims of the sort at issue here.

---

7. Under the Act, the district court's review of PRRB decisions is governed by the scope of review provisions of the Administrative Procedure Act, 5 U.S.C. section 706. See 42 U.S.C. section 1395oo (f)(1); *Biloxi Regional Medical Center v. Bowen*, 835 F.2d 345, 348 n. 13 (D.C. Cir.1987). Because the PRRB's decision is the result of 'an agency hearing provided by statute,'

a reviewing court must set aside PRRB decisions found to be 'unsupported by substantial evidence' after the court has reviewed the whole record. 5 U.S.C. section 706(2)(E) (1982). See *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir.1986), cert. denied, 482 U.S. 905, 107 S.Ct. 2481, 96 L.Ed.2d 373 (1987); *Biloxi*, 835 F.2d at 348 n. 13.

It is clear that HCMC did not qualify for an exemption under the regulation; therefore, no relief is due under the applicable exceptions to the limitations on reimbursable costs. It does not matter that the regulation covering post–1980 claims is more favorable to providers. What does matter is that HCMC did not satisfy the LAWFUL regulation covering 1980 claims.

It may be true that HCMC's reliance on the HCFA Study was 'reasonable,' but this does not mean that HCFA's refusal to accept it as sufficient to justify a 42 U.S.C. section 405.460(f)(4) exception was arbitrary or unreasonable. Indeed, HHS does not argue that this reliance was not reasonable, but only that these Studies were not hospital-specific enough to meet the additional requirements of proving an INDIVIDUAL exception to the cost limits. Put another way, this Study offers the type of information required for formulation of a new general regulation rather than that required to meet the specific needs of the original particular exception under 42 C.F.R. section 405.460(f). While it may not have been unreasonable for HCMC to interpret the Study data otherwise, HCMC has made absolutely no showing that HHS's interpretation was not reasonable.[8]

Accordingly, we affirm the District Court's judgment on Count I. We reject HCMC's argument that it was unlawful for HHS to reject its petition for an immediate exception under 42 C.F.R. section 405.-460(f)(4). There is substantial evidence on the record as a whole to support the PRRB finding that HCMC had not 'separately identified' its costs warranting a claim for a medical education exception, and the decision was neither arbitrary, capricious, nor an abuse of discretion.

## B. COUNT II: THE RETROACTIVE CORRECTIVE ADJUSTMENT

■ On the claim arising under Count II, we reverse the judgment of the District Court. On the facts of this case, we hold that the retroactive adjustment provision of 42 U.S.C. section 1395x(v)(1)(A)(ii) provides no basis for a remand to the PRRB. There can be no retroactive readjustment here because it is clear, as we have explained, that under existing, lawful methodology, HCMC failed to demonstrate that it was entitled to an exception from routine reimbursement cost ceilings. Therefore, HCMC has already received everything to which it is entitled. Section 1395x(v)(1)(A)(ii) is not a vehicle through which Medicare providers may get a 'second bite at the apple' on claims for exceptions to limitations on reimbursable costs.

The District Court apparently believed that, even though HCMC could not succeed on its claim for reimbursement under the applicable standard, it could use section 1395x(v)(1)(A)(ii) to require HHS to reassess the same claim under precisely the same standard that had already proven unsuccessful. However, both counsel acknowledged at oral argument that this rationale could not support a judgment for HCMC. We agree, because the Supreme Court made clear in Georgetown Hosp. that the regulations promulgated pursuant to the statutory retroactive corrective adjustment provision of 42 U.S.C. section 1395x(v)(1)(A)(ii) were wholly apart and distinct from the substantive regulation considered in Count I of this litigation. Unlike the medical costs exception regulation, the regulations promulgated pursuant to the

---

**8.** HCMC complains that HHS did not give providers any guidance as to what would be sufficient data to meet the HHS standard for a medical education exception. However, HCMC disregards the concrete information HHS did provide. For example, HHS states that 42 C.F.R. section 405.460(f)(4) does not require providers to precisely quantify its indirect costs with 'mathematical exactitude,' but only that providers supply some specific individual data to demonstrate alleged entitlement to an upward adjustment to the 1980 cost limits. Had HCMC provided any such information, HHS claims, HHS would have applied a 'rule of rea-son' to this information when deciding on HCMC's entitlement. Brief for HHS at 47–48. HCMC never attempted to provide any such individualized information. For example, HCMC could have estimated average additional nurse time spent on rounds when a nurse is also instructing a medical student. Similarly, HCMC never attempted to show that its expenses were higher 'compared to other providers in its group' 42 C.F.R. section 405.460(f)(4), which would have provided additional particularity. Instead, HCMC overlooked what clear guidelines HHS offered.

retroactive adjustment provision permit adjustments only to the AGGREGATE AMOUNTS of reimbursement pursuant to valid regulatory methods; they do not permit changes in the METHODS used to compute costs. See *Georgetown Univ.*, 109 S.Ct. at 473 & n. 2 (characterizing 42 C.F.R. sections 405.451(b)(1), 405.454(a), (f)).

Furthermore, we reject HCMC's suggestion that 42 U.S.C. section 1395x(v)(1)(A)(ii) should be read to compel the Government, after the fact, to consider whether, as a matter of 'fairness,' claimants should be awarded something more than lawful regulations required. As noted above, the Court in Georgetown Univ. held that the point of the accounting provisions promulgated pursuant to 42 U.S.C. section 1395x(v)(1)(A)(ii) is to ensure that petitioners receive what they are actually due under the applicable regulation, no more and no less. Thus, the clause does not authorize a post hoc reassessment of the efficacy of the relevant standard, only of the calculations made pursuant to that standard. Requiring a retroactive reassessment here would call for precisely such a post hoc reassessment, and cannot be sustained.[9]

### III. CONCLUSION

Because we find that HHS properly denied HCMC an immediate medical education costs exception under 42 C.F.R. section 405.460(f)(4), we affirm the District Court's ruling on Count I. The record clearly supports the PRRB denial of such an exception to HCMC.

However, because HCMC cannot be granted claims retroactively that were not warranted in the first instance, we reverse the District Court's remand to the PRRB on Count II. We grant summary judgment on behalf of HHS on this issue as well.

Judgment accordingly.

---

**9.** In this regard, this case is completely distinguishable from this circuit's recent decision in *Beverly Hosp. v. Bowen*, 872 F.2d 483 (D.C.Cir. 1989). Beverly Hosp. involved a substantive agency regulation that was void ab initio, see 872 F.2d at 485, whereas the case before us today involves an indisputably valid regulation.